# Buechley's Estate.

*Wills—Construction—Inconsistent clauses—Real and personal estate—Intestacy—Intention.*

1. Where a will uses language indicative of an intention to make a complete disposition of all property, the court must adopt such construction as will effect the intention and avoid an intestacy.

2. Where there is a gift of an entire estate by clear and explicit language, the presumption is that the gift is absolute, and subsequent clauses to reduce it must do so by language which is equally clear and explicit, having the undoubted effect of causing such diminution.

3. Where the two clauses cannot stand because of manifest inconsistencies, the latter clause must prevail.

4. In interpreting a will, the court will confine itself to the meaning derived from the words used, yet the circumstances attending the execution may be considered, if necessary.

5. Where testator gives and bequeaths all the remainder of his estate to a son, naming him, and immediately thereafter says, "I will all my property real estate to my son," naming the same son, such son takes the whole estate, real and personal.

6. In such case, a different construction would not only cut down an absolute entire gift, but would also create an intestacy and declare as of no avail what testator tried to do,—to distribute all his property.

7. The words quoted may be considered as a tautological statement of what had preceded it.

Argued February 10, 1925. Appeal, No. 247, Jan. T., 1925, by Laura B. Kenney and Frederick Bryson Buechley, children of testator, from decree of O. C. Schuylkill Co., March T., 1924, No. 14, dismissing exceptions to adjudication in estate of William Buechley, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication. Before WILHELM, P. J.

The opinion of the Supreme Court states the facts (see also 278 Pa. 227).

Exceptions dismissed. Laura B. Kenney and Frederick Bryson Buechley, children of testator, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Cyrus G. Derr*, with him *P. B. Roads* and *Geo. M. Roads*, for appellants, cited: Hancock's App., 112 Pa. 532.

*Joseph W. Moyer*, for appellee, cited: Turbett v. Turbett, 3 Yeats 187; Busby v. Busby, 1 Dall. 226; Archer v. Deneale, 1 Peters (26 U. S.) 588; Weatherhead v. Baskerville, 11 Howard (52 U. S.) 329; Foster v. Stewart, 18 Pa. 23.

OPINION BY MR. JUSTICE KEPHART, March 16, 1925:

This is the second attempt to make a new disposition of the estate of William Buechley, deceased, valued at more than one hundred thousand dollars. His holograph will was first assailed as a forgery, then as being procured under undue influence. Having failed in these efforts (278 Pa. 227), a second attack is here made on the plea that he died intestate as to the larger part of his property. This claim was denied by the court below, and the present appeal followed.

The determining part of Buechley's will reads, "I William Buechley......, do make this my last will and testament, hereby revoking any—and all wills heretofore made by me......Item I give and bequeathe all the Remainder of my Estate to my—Son William Buechley Jr. whom I make constitute and appoint my Executor of this my last will and testament. Item I will all my Property real Estate to my Son William Buechley Jr."

It is the contention of testator's other children, appellants here, that the last clause clearly shows testator's intention to limit William's bequest to the real estate, which construction requires the personalty to pass without testamentary disposition. They argue that where a testator expressly declares his intention to give an entire class of objects to a legatee, and subsequently declares that he intends to give part of this class to the legatee, the latter expression must be given controlling effect by way of substitution for the former as indicating the changed intention in the testator's mind after he had written the preceding sentence, and the last expression must prevail. To sustain this conclusion not only must the will clearly indicate such construction, but it must do so in the face of certain legal principles promulgated to aid in ascertaining testator's intention and to effectuate it when discovered. These principles clarify what might otherwise be considered as a doubtful interpretation of a testator's will. Testator had an unquestioned right to distribute his entire property to and among beneficiaries of his own choosing, even if those of the same blood think they may be wronged thereby.

The will uses language indicative of an intention to make a complete disposition of all the property. To effect this intention a construction should be adopted that avoids intestacy: Biles v. Biles, 281 Pa. 565, 568. Where there is a gift of an entire estate by clear and explicit language, the presumption is that the gift is absolute, and subsequent clauses to reduce it must do so by language which is equally clear and explicit, having the undoubted effect of causing such diminution: Smith v. Bloomington, 282 Pa. 248. Where the two clauses cannot stand because of manifest inconsistencies, the latter clause must prevail.

With these general principles in mind, we must decide whether testator intended to give William only the

real estate? In interpreting the will we shall confine
ourselves to the meaning derived from the words used,
rather than what he meant as derived through the cir-
cumstances attending the execution, though the latter
may, if necessary, be considered: Crick's Est., 35 Pa. Su-
perior Ct. 39; Moore's Est., 241 Pa. 253. The court be-
low depended largely on the latter to sustain its position.
The will is written by testator's own hand, and, like
many laymen, he did not comprehend the exact and in-
clusive meaning of the words employed. He gave all
the remainder of his estate to his son. These words
indicate an intention to give the whole estate,—all that
he owned. They would mean so to a lawyer, and to
almost everyone. It is unnecessary to cite authorities
defining their extent, meaning and effect. It is suf-
ficient to say that their use passes absolutely the entire
property of the testator, not otherwise specifically dis-
posed of. If testator intended to delimit this compre-
hensive gift, he would have employed language which
conveys that idea. Such words as "I will all my prop-
erty real estate to my son" can scarcely be said to be such
clear and explicit language as evidences an intention to
cut down the prior estate. He had given everything.
He again gave a portion of it the second time to the same
person. Had the devise been to one of the other children
the situation would be different. Why did he add this
sentence? It may be he did not know, when using the
words "all my estate," they included real estate, and,
to make it certain in his own mind, he specifically men-
tioned the latter. There is nothing contradictory in the
two phrases. It would require a strong stretch of the
imagination to hold this language sufficient to cut down
an absolute gift of all the remainder of his estate. It
might be considered as one of those rambling restate-
ments or reutterances which commonly occur with men
such as testator, who are unaccustomed to dealing in
legal phraseology. If we should support appellants'
view we would not only cut down an absolute entire gift,

but would also create an intestacy and declare as of no
avail what testator tried to do,—distribute all his prop-
erty. It would be a fanciful and forced construction to
hold as appellants contend. Indeed, as in Baughman's
Est., 281 Pa. 23, 28, the latter clause may be said to be a
tautological statement of what had preceded it.

The decree of the court below is therefore affirmed, at
the cost of appellants.