Fisher's Estate.

Argued December 2, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Raymond M. Remick,* with him *Hymen Rubin,* for appellant.—The laws of descent and inheritance of the soldier's domicile govern disposition of computed value of war risk insurance: Ogilvie's Est., 291 Pa. 326; Fix's Est., 75 Pitts. L. J. 585; Wanzel's Est., 295 Pa. 419; Schultz's Est., 96 Pa. Superior Ct. 514; Meisenhelter's Est., 297 Pa. 292.

Decedent died intestate as to fund in question: Kimmel's Est., 226 Pa. 47.

Should it be determined that an intestacy as to the fund in question does not result, then appellant still claims the fund, regardless of whether the computed value of the war risk insurance becomes part and parcel of the decedent's estate, or whether it is paid merely to the fiduciary to be passed on as through a conduit to those entitled: Ogilvie's Est., 291 Pa. 326.

Wanzel's Est., supra, pertains to the right of the State of Pennsylvania to claim inheritance tax from out of a war risk insurance fund. The question as to whether the computed value of war risk insurance is an integral part of the insured's estate did not come squarely before the court as it did in Ogilvie's Est., supra.

The war risk insurance certificates issued to soldiers were uniform in language and were subject, under their terms, to any amendments thereafter adopted: Ogilvie's Est., 291 Pa. 326.

The right of the government to contract with the soldier so as to enable Congress to pass subsequent legislation, enlarging the original act and consequently the scope of the contract, was favorably decided in the case of White v. United States, 270 U. S. 175.

The fund involved is not a bounty: United States v. Worley, 281 U. S. 339.

If the fund in question is not part and parcel of the estate of Benjamin H. Fisher, the orphans' court is without jurisdiction: Heard's Est., 76 Pitts. L. J. 225; Ogilvie's Est., 291 Pa. 326; Kober's Est., 18 Pa. Dist. R. 213.

The computed value of war risk insurance is not an expectancy, as in Lennig's Est., 182 Pa. 485; rather, it constitutes a contingent interest or a vested right: Robbins's Est., 199 Pa. 500.

Lennig's Est., 182 Pa. 485, does not apply.

The war risk insurance fund was reasonably within the scope and intent of the assignment: Henderson v. Bishop, 250 Pa. 484; Wood's Est., 243 Pa. 211.

*Walter Lee Sheppard,* of *Foulkrod, Sheppard, Porter & Alexander,* with him *John B. Stevens* and *William D. Harkins,* for appellees.—The will of Benjamin Fisher disposed of his entire estate, and he did not die intestate as to the war risk insurance moneys here in question: Buechley's Est., 283 Pa. 107; Caldwell v. Skilton, 13 Pa. 152.

The war risk insurance moneys are outside the purview and subject-matter of the alleged assignment to appellant's decedent: Hay v. Baer, 48 Pa. Superior Ct. 231; Schnee v. Elston, 299 Pa. 100; Wanzel's Est., 295 Pa. 419.

The alleged assignment was without consideration, and was inoperative in law to convey any right to the

war risk insurance moneys, which right was not then in existence: Lennig's Est., 182 Pa. 485; DeVore's Est., 89 Pa. Superior Ct. 47.

The war risk insurance moneys are not an asset of the estate of Benjamin Fisher, deceased: Wanzel's Est., 295 Pa. 419.

This method of distribution of the benefits of federal grants through the instrumentality of the state courts and local procedures incident to the administration of decedents' estates, is not new, and the limited character of the special property so administered by the state tribunals has long been recognized: Clement's Est., 160 Pa. 391; Smith's Est., 8 Pa. D. & C. 639; Kober's Est., 18 Pa. Dist. R. 213; Wanzel's Est., 295 Pa. 419.

OPINION BY MR. JUSTICE KEPHART, January 5, 1931:

The question involved in this appeal is the ownership of the commuted value of war risk insurance. The heirs of the beneficiary named in the policy claim it through intestacy as direct heirs of the deceased soldier and as assignees of the remaindermen named in the will. The court below awarded the fund to the soldier's aunts, the remaindermen named in the will.

Benjamin Fisher was killed in battle in 1918. He had previously taken out war risk insurance wherein his brother George was designated beneficiary. Benjamin's will provided that after payment of his debts "all [his] property, real, personal and mixed" should be placed in trust for the use of his brother George, to be paid to him quarterly in such amounts as the trustee should deem necessary. After his death the trustee was "to convert the said property into cash" and distribute it among his aunts. George died in 1929 and the commuted value of the unpaid installments was paid to the executor of Benjamin's estate.

Appellants, heirs of George, contend that the will is inadequate to embrace after-acquired funds and must be restricted to property which could be administered and

converted into cash at George's death, and that this was the only property the aunts were to receive; they argue that inasmuch as the fund did not exist at that time, coming into existence on George's death years later, it could not be included in Benjamin's estate to pass under his will and as to this fund he died intestate.

The trustee was given *all his property,* real, personal and mixed, not only presently owned, but which would come into existence in the future. The testator's right to any property was carried along by the trustee. He was the only devisee under the will and as trustee was to hold *all* the property *in trust for George for life* and at his death to pay it to Benjamin's aunts. "All my property" is a more comprehensive term than "all the rest, residue and remainder" of my property, and appellant concedes that if the latter phrase had been used, it would carry with it this commuted value as after-acquired funds. Residue implies something left after a portion of an estate has been given away, and might have been used after the direction to pay debts, but as the law requires debts to be paid, the absence of a residuary clause does not restrict the inclusive features of the dispositive clause. The rule to be applied in the interpretation of wills is one that promotes testacy, not one to prevent it: Biles v. Biles, 281 Pa. 565, 568; Buechley's Est., 283 Pa. 107, 109. Moreover, if appellant's argument is correct and George had predeceased his brother, the aunts would get nothing, for, if the property that passed to them was only such as could be administered and converted by the trustee, George's death would prevent the trust from arising. See Caldwell v. Skilton, 13 Pa. 152, 156. The direction to convert does not affect this right. It would have no effect on money and as an explanatory phrase it neither helps nor restricts deceased's bequest to the trustee. The fund passed to the trustee and was under his control for the purposes specified. There was no intestacy.

In discussing whether the fund passed under an assignment from the aunts to George in 1919, some underlying questions as to the character of the fund must be considered. The Act of Congress of October 6, 1917 (40 Stat. 398), permitted a "spouse, child, grandchild, parent, brother or sister" of the soldier to receive the benefit from the insurance. In case the beneficiary did not survive final payment, the unpaid installments went to those within the class who would be entitled to take personal property under the laws of the state of residence of the insured. Realizing the difficulty in making such payments, Congress in 1925 named the estate to receive the fund. This act provided that if no person within the permitted class was named, or if the beneficiary dies prior to receiving all the benefits, the unpaid installments "shall be paid to the estate." This section of the act was effective as of 1917.

Appellants contend that regardless of testacy or intestacy the commuted value is payable to the estate as part of it *and distributable as such* and therefore it was included in and passed under the general terms of the assignment. Much reliance is placed on Ogilvie's Est., 291 Pa. 326. In that case the court held that the unmatured insurance was payable to the estate and distributable as a part thereof. We did not there hold that in distribution the fund lost the quality attached to it when it left the federal government.

If we keep in mind the purpose and cause for the creation of war risk insurance we will better understand the subject. The primary object was to aid the soldier and his relatives within a limited class; it was given for a very small sum in recognition of services the soldiers were giving for their country. It might be called a bounty, donation, or a gift; it certainly did not possess the incidents of ordinary insurance. Though it was predicated on a contract, that feature will not obscure the real reasons for issuing war risk insurance. The right to change the contract (White v. United States

et al., 270 U. S. 175) does not alter the original conception of the plan, nor affect the quality of the beneficence. Ogilvie's Est., supra, did not override this purpose or make the fund subject to taxes, debts and every conceivable vicissitude of an ordinary estate. The fund arising from war risk insurance is an earmarked fund that has impressed on it the quality given to it by the United States Government—the quality of a national donation, bounty, or gift for services in defense of the nation. The fund may be traced through the various agencies until it reaches its final destination in consummation of the original purpose for its creation. The badge of national obligation to a soldier protects it from liability for taxes, debts and the like; these attributes control the instant case. There is nothing in Ogilvie's Est., supra, that decides otherwise.

The "estate" was employed by Congress as a conduit so that distribution could be made to the proper persons, or as a method of determining what relatives were to get the money and in order to place the distribution under a safeguard of state laws: Wanzel's Est., 295 Pa. 419; see Clement's Est., 160 Pa. 391. The gift was what its name implies, war risk insurance. Congress was not interested in setting up a fund for creditors and excisors. The estate may sue to recover it from the United States (United States v. Worley, 281 U. S. 339), but when recovered the fund is still marked with the same purpose that Congress intended it to have.

Wanzel's Est., supra, seems to disturb appellant. In that case we did not set up an arbitrary classification of the fund nor attempt to evade the direction of Congress to relieve the fund from taxation. The fund in effect was a trust fund for the soldier's benefit. It is not difficult to conceive of a piece of property that is to be devoted to a particular use or purpose traveling through an estate freed from ordinary claims and retaining the same characteristics with which it started; this is the effect of Wanzel's Est., supra. The estate

is a mere conduit to carry out the intent of Congress until the fund reaches the designated persons. It was not an asset of the estate nor such an integral part of the estate as would bring it within the terms of the assignment.

Nor was the accumulated value within the contemplation of the parties at the time the aunts assigned their interest in Benjamin's estate to George in August, 1919. The inception of George's right was of the date of the assignment. The fund was then not in fact a part of the estate. Neither the estate nor the aunts, the assignees, were entitled to get anything from the war risk insurance at that time. The acts of Congress did not include aunts within the permitted class. There was a bare possibility that Congress might change the contract, but the substantive rights outstanding were controlled by the then existing legislation. The possibility of change was a mere expectancy, which has been defined as being a mere hope of succession to property. See Robbins's Est., 199 Pa. 500, 501. This hope for a benefit to come into existence through a change in the law may give rise to a right, but would be of such an illusory nature as not to merit consideration here. The right proposed to be assigned was nothing but a remote expectancy.

While Lennig's Est., 182 Pa. 485, may not be entirely applicable, much of its reasoning applies. There an assignment such as the one before us was held invalid because the thing proposed to be given had no existence and was without consideration. We will not attempt to distinguish the many cases cited by appellant; for one reason or another they do not apply.

The war risk insurance was not within the scope of the assignment for another reason. George, the beneficiary, had an interest in his mother's estate and had managed it in such a way as to be guilty of misappropriation of money. In order to settle this estate he procured from his aunts, the remaindermen, an assignment of their interest in Benjamin's estate. The assignment

read that whereas Benjamin had died "possessed of certain real and personal property, the aunts granted all their right, title and interest......in and to the real and personal estate of Benjamin.......aforesaid...... whether payable now or......hereafter." What they were then dealing with was Benjamin's then existing estate. The insurance fund was not an asset of the estate and it was not within the description of the property in the assignment. We early held that "however general the terms may be in which an agreement is conceived, it only comprehends those things in respect to which it appears that the contracting parties proposed to contract; and not to others never thought of": Case v. Cushman, 3 Watts & Sergeant 544, 546. "All contracts must be construed with reference to their subject-matter and obvious purpose, and......their scope and effect are necessarily limited and controlled thereby": Schnee et al. v. Elston et ux., 299 Pa. 100. These three ladies made an assignment of the then existing property in Benjamin's estate to George so that he could reimburse his mother's estate. It did not bind, nor had the parties any idea of binding, nonexisting assets not a part of the estate. In any event, there was no intention by subsequent legislation of Congress to make the fund a general asset of the estate: Wanzel's Est., supra; Clement's Est., supra.

Through our independent investigation we find that there is a positive prohibition against the assignment of War Risk Insurance except under certain conditions. The Act of September 2, 1914, clause 293, section 28, as amended by Act of June 25, 1918, clause 104, section 2, provides that "The allotments and family allowances, compensations, and insurance payable under articles II, III and IV, respectively, shall not be assignable, shall not be subject to the claims of creditors of any person to whom an award is made under articles II, III or IV, and shall be exempt from all taxation," and the Act of October 6, 1917, 40 Stat. 398, 409, provides, "The insur-

ance shall not be assignable and shall not be subject to the claims of creditors of the insured or the beneficiary; it will be payable only to the spouse, child, grandchild, parent, brother or sister......or to any or all of them." Section 6 of the Act of December 24, 1919, clause 16, 41 Stat. 372, provides that "the provisions of section 28 of the War Risk Insurance Act shall not be construed to prohibit the assignment by any person to whom converted insurance shall be payable under article IV of such act of his interest in such insurance to any other member of the permitted class of beneficiaries."

The assignment in this case was made in August, 1919, when the aunts were not within the permitted class of beneficiaries [they were later placed within that class by the Act of Congress of December 24, 1919]. It is to be noted that the Acts of 1924 and 1925 are both retroactive so as to be effective as of October 6, 1917, and inasmuch as this assignment was to a member of the permitted class, who was not a creditor, the tenor of the reasoning would be to support the validity of the assignment if there were no other objection to it. See White v. U. S., supra. Appellant has very wisely observed that "To make computed war risk insurance part and parcel of the deceased soldier's estate as of the date of his death, and yet to give effect to a Congressional restriction against assignment or the exemption of the fund as a part of the deceased soldier's estate from his creditors, is contradictory." It was for this reason and to keep the legislation in harmony that we held in Wanzel's Est., supra, and here hold that the fund is not part of the deceased soldier's estate as such but is an earmarked fund, having certain special characteristics, among which are exemption from debts and taxes in addition to the nature of the gift itself. We have decided, for other reasons than the prohibition in the Act of Congress, that the assignment is ineffective in this case.

The court below was not in error in holding that the fund passed to the aunts under the will.

The decree of the court below is affirmed, costs to be paid out of the fund in dispute.