## Cooper's Estate

*Cornelius D. Scully*, for surviving trustee, accountant.

*Charles E. Young*, for trustee under deed, accountant.

*Wilbur L. Austen* and *Joseph W. Ray*, for beneficiaries.

TENER, J., September 4, 1945.—The questions here presented are, first, whether there is an intestacy in the twenty-first paragraph of the will of Joseph L. Cooper, and, second, what effect shall be given to a deed of trust executed by Frances Elizabeth Cooper, his wife.

### I.

Joseph L. Cooper died testate July 31, 1915. By the third paragraph of his will he gave to his wife, Frances Elizabeth Cooper, a life estate in two properties situated on Monterey Street in Allegheny City, now north

side, Pittsburgh, and in a property situated in Aliquippa, Beaver County, Pa.

By the twentieth paragraph of his will he devised all the rest, residue, and remainder of his estate to his wife for life.

In the twenty-first paragraph of his will he directed that "at the death of my wife, my estate shall be divided into five equal parts or shares; one of which I devise and bequeath to my sister-in-law Mary Emma Mullin of Fayette City, Pennsylvania, absolutely; one to my niece Ella Dixon of Uniontown, Pennsylvania, absolutely; one to my niece Mrs. Belle Cooper Fox of New Kensington, Pennsylvania, absolutely; one to my sister-in-law Mrs. Orthelia McCune for and during her life and at her death to Mary Emma Mullin, my sister-in-law, absolutely".

Included in the residuary estate was a property in the Ozark Mountains, Franklin County, Ark.

On September 14, 1922, the four remaindermen, Mary Emma Mullin, Ella Dixon, Belle Cooper Fox, and Orthelia McCune, conveyed all their right, title and interest under the will of Joseph L. Cooper in the properties on Monterey Street, Pittsburgh; in Aliquippa, Beaver County, and in the Ozark Mountains, Arkansas, to Frances Elizabeth Cooper, the life tenant. These deeds were absolute on their face.

On November 24, 1922, Frances Elizabeth Cooper, by deeds of special warranty, sold the Monterey Street properties; and, by deed of special warranty, on December 12, 1922, the property in the Ozark Mountains, in Arkansas.

On June 18, 1923, Frances Elizabeth Cooper entered into a trust agreement with The Union Trust Company of Pittsburgh, as trustee. By the terms of this instrument she transferred to the trustee cash, in the amount of $4,576.75, a mortgage from J. B. Powell, in the amount of $3,000, and a mortgage from Peter McManus and wife, in the amount of $4,000. These items

represent the cash and purchase money mortgages received by Frances Elizabeth Cooper from the sales of the properties on Monterey Street and in the Ozark Mountains.

The trust instrument reserved to the settlor the right to add other assets to the trust estate but required the approval of Mary Emma Mullin, Ella Dixon, Belle Cooper Fox, and Orthelia McCune, the four remaindermen named in the twenty-first paragraph of the will, for its revocation.

On April 16, 1924, Frances Elizabeth Cooper sold the Aliquippa property for $1,000 cash and a purchase money mortgage of $1,800.

On December 23, 1944, Frances Elizabeth Cooper died testate. The Union Trust Company of Pittsburgh is executor of her will.

Two accounts have been presented for audit. The first is the account of The Union Trust Company of Pittsburgh, surviving trustee of the estate of Joseph L. Cooper; the second is an account filed by The Union Trust Company of Pittsburgh "in re deed of trust of Frances Elizabeth Cooper".

The latter account shows the rents collected from the properties on Monterey Street and in the Ozarks from the date of the death of Joseph L. Cooper; the proceeds of the sales thereof; the liquidation of the purchase money mortgages taken in such sales, and the investment and reinvestment of the proceeds of the sales. It brings the principal fund, derived from such sales, into court for distribution.

From the record it appears that the accountant managed the Monterey Street and Ozark Mountain properties for Frances Elizabeth Cooper both before and after the execution of the deed of trust, and that on its books the caption of the account, "agent for Frances Elizabeth Cooper", was not changed after the execution of the trust instrument. No part of the principal was ever distributed. The account opens at the death

of Joseph L. Cooper and is closed at the death of his wife, Frances Elizabeth Cooper.

## II.

The twenty-first paragraph of the will of Joseph L. Cooper directed that his residuary estate be divided "into five equal parts or shares". There follow devises and bequests of one part to each of only four individuals. As noted above, the first question is whether or not an intestacy occurred as to one fifth of the residuary estate.

The reasonable and natural presumption from the fact of writing a will is that the testator intends to dispose of his entire estate. "The rule to be applied in the interpretation of wills is one that promotes testacy, not one to prevent it": Fisher's Estate, 302 Pa. 516, 521; Biles v. Biles, 281 Pa. 565, 568; Buechley's Estate, 283 Pa. 107, 109; Duffy's Estate, 313 Pa. 101, 106. The presumption in favor of testacy and against intestacy is strong where doubt arises as to the construction of a residuary clause; there must be "a necessary and an inevitable inference from the words of the will that the testator intended to die intestate . . . and to devise only the one fifth part [of his estate] thereof.": Hancock's Appeal, 112 Pa. 532, 541.

In doubtful cases "that interpretation is to be adopted if possible which avoids a partial intestacy, unless it clearly appears that the testator intended to die intestate as to part of his property. The presumption against an intestacy is particularly strong where the subject of the gift is the residuary estate": 28 R. C. L. 228, §189.

In the will now under consideration, 19 paragraphs are devoted to specific bequests; they would seem to constitute an inventory of the estate. After (first paragraph) directing the payment of his debts and funeral expenses, the testator gives (second paragraph) to his wife the furniture, plate, bric-a-brac, pictures, linen

and household furnishings and goods owned by him at the time of his death; then (third paragraph) to his wife a life estate in the real estate on Monterey Street and in Aliquippa, in 260 shares of J. C. Russell Shovel Company stock, in 150 shares of the preferred stock of the Crucible Steel Company; in 218 shares of the common stock of Crucible Steel Company, in a life insurance policy and proceeds issued by the Hartford Life & Annuity Company, in 50 shares of the capital stock of the Sharon Trust Company, in 50 shares of the capital stock of the Bankers Trust Company, and in 25 shares of the capital stock of the Altoona Trust Company; then, except for paragraph 11, which bequeaths shares of Shovel company stock, follow 15 pecuniary bequests, each being the subject of a separate paragraph. In the twentieth and twenty-first paragraphs, the residue is disposed of.

Nor is the list of legatees without significance. They are his wife (he died childless), his sister-in-law, Mary Emma Mullin (also named as a remainderman in the residuary clause), his niece, Ella Dixon (also named as a remainderman in the residuary clause), her son, Joseph Dixon; his sister-in-law, Orthelia McCune (also named as remainderman in the residuary clause), his niece, Belle Cooper Fox (also named as remainderman in the residuary clause), his niece, Celia Cooper, the son of his nephew, Joseph L. McCune; the Methodist Episcopal Hospital of Brooklyn, N. Y.; the West Penn Hospital of Pittsburgh, Methodist Episcopal Church of Fayette City, Pa.; the Allegheny General Hospital of Pittsburgh; the Bethesda Home of Pittsburgh; the Board of Missions of the Methodist Episcopal Church; the Church Extension Society of the Methodist Episcopal Church.

It does not seem possible, in the light of the nature and scope of his will, that Joseph L. Cooper intended to die intestate as to any part of his estate, or that he intentionally divided the residue into five parts and

then intentionally disposed of only four such parts. It may be that he failed, by mistake, to name a fifth residuary legatee. Considering the persons and institutions which he made the objects of his bounty, it seems much more likely, however, that the word "five" is a mistake than that some person has been overlooked by mistake.

Obviously a mistake was made. Which is the more probable, that the testator made a mistake by not naming some person, or that the scrivener made a mistake by writing "five" instead of "four"? When regard is had for the long list of those whom he remembered the mistake would seem to be not his but the scrivener's.

The orphans' court, within the framework of its statutory jurisdiction, exercises the powers of a court of equity. As early as 6 Watts 192 (in the case of Vernor v. Henry) where the devise was "I give and devise unto the two daughters of my deceased brother, John Vernor," etc. (when in fact there were three daughters) the Supreme Court said (p. 206):

"It is merely correcting a mistake of the testator made manifest, as to the true number of those who appear to have been all alike the objects of his bounty; and this is done either by striking out the *number* inserted, without more, or by reading it as if it were written 'all' instead of 'two,' or 'three' as it may happen to be. This is every day's practice in the construction of wills, in order to effectuate the plain intention of the testator, as for instance 'or' is construed 'and,' and so vice versa."

Justice Story (1 Story's Equity, secs. 179, 180) says:

"In regard to mistakes in wills there is no doubt that courts of equity have jurisdiction to correct them, when they are apparent on the face of the will, or may be made out by a due construction of its terms; for in cases of wills the intention will prevail over the words. . . . So, if there is a mistake in the name, or description, or number of legatees, intended to take, or in the

property intended to be bequeathed, equity will correct it."

This language was quoted with approval by the Supreme Court of Virginia in Effinger v. Hall, 81 Va. 94. (The devise there was "and the proceeds thereof be divided into seven equal parts; one part of which I give to the children of my brother Tom", etc. The testator then named eight beneficiaries altogether.)

It also may not be without significance that when, in the instant case, testator uses the word "divided" he does not use it in the sense of "distributed". He directs that his residuary estate "shall be divided into five equal parts or shares" and then "one of which I devise and bequeath", etc. The word "divide" is not a word of disposition. It is perfectly consonant with the testamentary intent, as here construed, to have omitted altogether from the devise the number of shares. Had he said that the residuary estate be divided in equal shares and then said, as he did, "one of which I devise and bequeath", there would be no possible doubt as to his meaning and the possibility of an intestacy could not have occurred. Also it would seem to be in harmony with a testamentary intention to dispose of the entire residue to read the words "one of which I give", etc., as "one of the equal shares", and not one of the "five equal shares".

The instant will differs from that construed in Duffield v. Morris, 8 W. & S. 348. There (p. 348) the Supreme Court said "and next to be '*divided*,' that is, 'distributed' (for the word 'divided', in this part of the clause, will admit of no other meaning) . . .". Had it admitted of another meaning the result, inferentially, would have been different. (Having "divided" his estate into 22 shares of which only 20 were disposed of, an intestacy resulted as to two of the shares.)

Accordingly, a decree will be entered distributing the residuary estate to the named remaindermen or to their representatives.

### III.

The fact that the accountant continued to carry the assets which comprised the principal of the trust estate in an account captioned as to indicate an agency rather than a trust, after the execution of the deed of trust, is of no importance. All of the assets are accounted for. Disbursements of income were made in accordance with the trust instrument; no distribution of principal has been made.

The remaindermen, under the will of Joseph L. Cooper, who are also the remaindermen under the deed of trust, by deeds absolute on their face conveyed all their right, title, and interest in the properties previously mentioned to Frances Elizabeth Cooper, the life tenant. The testimony of Belle Cooper Fox, one of the remaindermen, is to the effect that although the deeds were absolute on their face it was not intended to convey the interests to the life estate otherwise than to facilitate a transfer to possible purchasers of an indefeasible title, and that the life tenant should hold the titles subject to the provisions of the twenty-first paragraph of the will. That such was in fact the intention appears from the terms of the deed of trust executed January 18, 1923. By it the proceeds of the sales then made are transferred to the trustee. The life tenant and remaindermen under the trust instrument are the same persons named in the will (twenty-first paragraph) as life tenant and remaindermen, and the interests of the latter, under the trust instrument, are protected from divestiture by revocation. It follows that the proceeds of the sale of the Aliquippa property which was consummated on April 16, 1924, after the execution of the trust instrument, are also subject to the provisions thereof.

Two of the remaindermen named in the twenty-first paragraph of the will, Ella Dixon and Belle Cooper Fox, are still living. Orthelia McCune died June 2, 1930. Upon the termination of her life estate her in-

terest passed to Mary Emma Mullin, who died March 16, 1941, testate. The Union Trust Company of Pittsburgh is executor of her estate.

The principal funds in the two accounts will be distributed as follows:

One fourth to Ella Dixon;

One fourth to Belle Cooper Fox;

One half to Union Trust Company of Pittsburgh, executor of the will of Mary Emma Mullin, deceased.

Decrees will be entered accordingly.