## Rice et ux. v. Shank

*Siegel & Siegal,* for plaintiffs.
*Albert Houck,* for defendant.

LEHMAN, P. J., April 10, 1954.—This case is before us on plaintiffs' motion for judgment on the pleadings.

No substantial factual dispute exists. The pleadings disclose that on April 29, 1953, plaintiffs agreed in writing with defendant to sell him a certain house and lot of ground in Yeagertown, Pa., for which defendant agreed to pay $15,000, $1,500 of which was paid upon the execution of the memorandum of agreement and the balance of $13,500 was to be paid on the date of settlement. The agreement contained the usual provisions relating to possession, proration of taxes, payment of realty transfer tax and time of settlement. In addition thereto, it contained the following provision:

"The premises are to be conveyed free and clear of all liens and encumbrances, and a good marketable and legal title is to be furnished".

Prior to the settlement date counsel for defendant wrote to counsel for plaintiffs that the title to the property in question was defective by reason of the fact that Josephine L. Yeager, a predecessor in title, conveyed the property in question to her husband, J. O. Yeager, on January 10, 1929, without his joining in the deed and that defendant stood ready, able and willing to pay the balance of the purchase price upon correction of that defect. Counsel for the parties thereupon agreed in writing to extend the date of settlement to June 15, 1953, and waived formal tender by both parties.

On July 7, 1953, plaintiffs filed the complaint in assumpsit against defendant, attaching a copy of the written agreement and extension thereof, avering tender to defendant within the time for performance thereof of a good and lawful deed, duly signed and acknowledged by plaintiffs, granting and conveying to defendant and his wife, as requested by defendant's counsel, in fee simple, free and clear of all liens and encumbrances, a good and marketable title to the premises, that demand was made upon defendant for the balance of the purchase money, and that defendant refused to accept the deed or to pay the balance of the purchase price. Judgment for $13,500, with interest thereon from June 15, 1953, was demanded.

Defendant by his answer, admitted all of the allegations except the sufficiency of the title and counterclaimed for the return of the down payment and his damages sustained by reason of certain repairs made by defendant to the property in question. After a reply containing new matter and defendant's counterreply, plaintiffs moved for judgment on the pleadings. Counsel for defendant argues that the title in question is not "a good marketable and legal title" for the following reasons:

1. The deed of Josephine L. Yeager, a predecessor in title, to her husband, J. O. Yeager, dated January 10, 1929, was defective by reason of the failure of her husband to join in the deed.

2. The will and codicil of J. O. Yeager devised a fee to Mabel McBride and not a life interest to her with remainder to G. Clifford Rice, one of the plaintiffs.

3. The title of G. Clifford Rice is not good, marketable and legal.

We will discuss these reasons in their order.

At common law, when a woman married, she lost her separate legal identity. It became merged in the husband during her coverture. Husband and wife were

but one person in law: 2 Coke on Littleton 187a, 2 Blackstone Commentaries 182. Because of this conception, married women have been impeded with many disabilities. One by one most of these limitations have been removed by statute. For the purpose of our discussion we will mention but a few.

In 1770,[1] the legislature provided a mode for the conveyance of a married woman's property which included execution by both husband and wife. The Act of April 11, 1848,[2] P. L. 536, recognized a married woman's ownership of her real estate as being absolute and free from her husband's control and claims of his creditors. Her property became liable for her debts and engagements. The Married Persons Property Act of 1887[3] accorded a married woman the same right to acquire and dispose of her property as if she were a feme sole, except that her husband's joinder was required in mortgaging or conveying her property. This act was replaced by a new Married Persons Property Act, approved June 8, 1893, P. L. 344, 48 PS §§31, 32, which provides as follows:

"Section 1. Hereafter a married woman shall have the same right and power as an unmarried person to acquire, own, possess, control, use, lease, sell, or otherwise dispose of any property of any kind, real, personal or mixed, and either in possession or expectancy, and may exercise the said right and power in the same manner and to the same extent as an unmarried person, but she may not mortgage or convey her real property, unless her husband join in such mortgage or conveyance.

"Section 2. Hereafter a married woman may, in the same manner and to the same extent as an unmarried person, make any contract in writing, or other-

---

[1] Act of February 24, 1770, 1 Sm. L. 307.
[2] Act of April 11, 1848, P. L. 536, 48 PS §64.
[3] Act of June 3, 1887, P. L. 332.

wise, which is necessary, appropriate, convenient or advantageous to the exercise or enjoyment of the rights and powers granted by the foregoing section, but she may not become accommodation indorser, maker, guarantor or surety for another, and she may not execute or acknowledge a deed, or other written instrument, conveying or mortgaging her real property, unless her husband join in such mortgage or conveyance."

It has been uniformly held that a married woman has no power to convey her real estate except in the precise mode prescribed by the statute conferring the power. Her power to convey is conferred by statute, and the mode thus prescribed is imperative. Neither the 1848 Act or the 1893 Act changed the provisions of the Act of 1770 which required a husband to join in the conveyance of a wife's real estate. Neither of these acts authorizes a married woman to make a valid conveyance of her real estate to her husband, either with his joinder (Alexander v. Shalala, 228 Pa. 297), or without it: Wicker v. Durr, 225 Pa. 305.

Immediately following these decisions, the legislature adopted the Act of June 3, 1911, P. L. 631, 48 PS §71, which provides as follows:

"Section 1. Be it enacted, &c, That it shall be lawful for a married woman to make conveyances of real estate to her husband as if she were a feme sole."

Counsel for defendant contends that all this act does is to permit a wife to convey to her husband, providing he join in the deed. Counsel for plaintiffs argues that the 1911 Act authorizes a married woman to convey to her husband without his joinder. We can find no appellate court decisions relating to a wife's conveyance to her husband after the effective date of this act.

In Mead v. Mead, 14 Lack. Jur. 136, Edwards, P. J., held that under the 1911 Act a wife can convey her

separate property to her husband without his joinder. This case arose when Mead sought to compel his wife to reconvey to him property then owned by him and his wife by the entireties upon his alleged fulfillment of certain conditions set forth in the written agreement between them.

Goldberg in The Law of Married Women in Pennsylvania, at page 106, states that:

"Where the conveyance is directly from wife to husband, such deed will be valid, where the wife signs alone, under the Act of June 3, 1911".

Thompson on Real Property, vol. 6, §2974, unequivocally asserts that:

"Where the statute does not expressly require the husband to join in a conveyance of the wife's property, and she has been given the right to deal therewith as if sole, it has generally been held that the wife may convey directly to her husband".

"Where a married woman is authorized by statute to convey lands, or to convey lands to her husband, as if she were a single woman, she may convey to her husband without the husband joining in the deed": 41 C. J. S., §141, Husband and Wife. See also 46 Dickinson Law Review 99 and 228.

The course of modern legislation has constantly tended towards giving a married woman full control over her property without the assent or concurrence of her husband: Thompson on Real Estate, vol. 6, sec. 2970. Furthermore, it is a cardinal rule in the interpretation of conveyances that every deed should be so construed as to give effect to the intent of the parties, unless inconsistent with some rule of law or repugnant to the terms of the grant: Vandergrift's Estate, 105 Pa. Superior Ct. 293, 296. It is the ultimate guide by which all deeds must be interpreted: Maxwell et al. v. Saylor, 359 Pa. 94, 96. Clearly, both

Mr. and Mrs. Yeager intended that her deed to him be valid. He clearly assumed he was the sole owner because he specifically devised the property in question (200 South Main Street, Yeagertown) in his codicil executed April 8, 1936. Counsel for defendant has cited the case of Smigell v. Brod, 366 Pa. 612, 79 A. 2d 411, as authority for the proposition that a married woman may not convey her real estate without the joinder of her husband. As a general statement of the law, this principle is correct, but it is subject to many well-recognized exceptions. The only issue in the Smigell case was whether a man's conveyance to a third party prior to his engagement to marry was a fraud upon his prospective wife. It in no way related to conveyances by married women and such a statement was obiter dictum. Among the exceptions to the general rule are when a husband neglects or refuses to provide for his wife,[4] or where husband and wife were living apart and the husband for one year or more has not supported his wife,[5] or where separated and by recorded agreement he has released his interest in her real estate.[6] In each of these cases a married woman can give a valid deed to her property without her husband's joinder.

It is true that the 1911 Act does not specifically repeal the Act of 1893. However, its intent is clear. It declared that a married woman could convey to her husband as if she were a feme sole. No restrictions were imposed. In fact, all were abolished. If a married woman were given authority to convey her own property direct to her husband, there would be no useful purpose in his joinder. It is evident that the Act

---

[4] Act of May 4, 1855, P. L. 430, sec. 2, 48 PS §42.

[5] Act of May 28, 1915, P. L. 639, sec. 1, as amended by the Act of May 11, 1927, P. L. 971, sec. 1, 48 PS §44.

[6] Act of July 9, 1897, P. L. 212, sec. 1, 21 PS §52.

of 1911 modified that portion of the Act of 1893 that required joinder where the grantee was the husband.

It is abundantly clear that when the Act of 1911 authorized a married woman to convey real estate to her husband as if she were a feme sole, no joinder was required because a feme sole is either a single woman, including one who has been married, but whose marriage has been dissolved by death or divorce, or a woman who is judicially separated from her husband. On the other hand a feme covert is a married woman: Bouv. Dict. When a married woman was declared feme sole trader she was authorized to convey a clear title to any one without her husband's joinder: Elsey v. McDaniel, 95 Pa. 472.

Section 2 of the Act of June 3, 1911, P. L. 631, attempted to validate prior conveyances from wife to husband but this section was declared unconstitutional as depriving of property without due process of law.

For the reasons above cited and the authorities stated, we are of the opinion that inasmuch as Josephine L. Yeager conveyed her property to her husband, J. O. Yeager, on January 10, 1929, after the effective date of the 1911 Act, her deed was valid and did not require her husband's joinder. In passing, we mention the Act of May 31, 1947, P. L. 352, 48 PS §32, amending the Act of 1893, which restated the law relating to a wife's deed to her husband by specially providing that the husband's joinder is not required where the wife conveys to him or to her husband and herself jointly.

The second defect in the title alleged by counsel for defendant is that the will and codicil of J. O. Yeager devised a fee to Mabel McBride and not a life interest with remainder to G. Clifford Rice, one of the plaintiffs. J. O. Yeager died May 23, 1941. The relevant portions of the codicil to his will are as follows:

"To Mrs. Mabel McBride I devise the Homestead including the garage and all improvements No. 200 S. Main St., Yeagertown with all the furniture and fixtures.

"The proceeds of the Trust Fund allocated to Mabel Allison McBride must be placed in a separate fund at the Citizens National Bank to be used in paying the taxes and keeping up the Insurance and repairs of the homestead and other property of which she became possessed by virtue of this will and testament—first: and any income that is left may be used as desired— Upon her death the proceeds of this Trust fund, as well as the Real Estate located at 200 South Main St., Yeagertown, shall revert to G. Clifford Rice."

It has been repeatedly held that a gift of an estate, absolute in the first instance, may, nevertheless, be diminished if subsequent clauses in a will clearly reveal testator's intention to effect such diminution. The intention of testator as gathered from the words used is the controlling factor: Johnson's Estate, 359 Pa. 645, 59 A. 2d 877; Byrne's Estate, 320 Pa. 513, 516, 181 Atl. 500; Buechley's Estate, 283 Pa. 107, 128 Atl. 730. Consideration must be given to all words used and, if possible, a result reached which is not in disregard of portions of the instrument: Johnson's Estate, supra; Greenwalt's Estate, 343 Pa. 413, 21 A. 2d 890; Chestnut et al. v. Chestnut et al., 300 Pa. 146, 151 Atl. 339, 75 A. L. R. 66; Wettengel's Estate, 278 Pa. 571, 123 Atl. 488. This same principle is applicable equally to devises of real estate as well as to bequests of personal property: Stanton et al. v. Guest et al., 285 Pa. 460, 132 Atl. 529.

Section 12 of the Wills Act of June 7, 1917, P. L. 403, 20 PS §224, provides that a fee will result "unless it appear by a devise over, or by words of limitation or otherwise in the will, that the testator intended to devise a less estate". Where the will shows a devise

over or that testator's dominant purpose was to provide less than a fee simple estate, a fee simple does not vest: Chestnut v. Chestnut, supra; Reiff v. Pepo, 290 Pa. 508, 139 Atl. 144.

In the instant case it is clear that J. O. Yeager intended to limit Mabel McBride to a life estate, with remainder to G. Clifford Rice, one of the plaintiffs. Not only does testator clearly provide for a devise over to Rice upon the death of Mabel McBride but is solicitous in seeing that the taxes, insurance and repairs to the property are paid during Mrs. McBride's lifetime and to effect such a purpose created a trust fund for this purpose. Had testator intended to vest a fee in Mrs. McBride, there would have been no purpose in creating such a trust.

Even though we were to determine otherwise, G. Clifford Rice is now the owner of the fee by virtue of the will of Mabel McBride and assignment from Charles Hugh McBride to G. Clifford Rice. Mrs. McBride died testate on March 17, 1943, and by her last will and testament, duly probated, devised and bequeathed her entire estate to her husband, Charles Hugh McBride, who in turn by assignment dated April 12, 1945, duly recorded, assigned all of his right, title and interest of his late wife and himself in the estate of J. O. Yeager to G. Clifford Rice, with certain exceptions not here relevant. All of the foregoing statements of fact were set forth in plaintiffs' reply and were admitted in defendant's counterreply.

We are, therefore, of the opinion that the deed of Josephine L. Yeager to her husband, J. O. Yeager, dated June 10, 1929, was a valid deed and conveyed good title even though there was no joinder by her husband and that the will and codicil of J. O. Yeager devised a life interest to Mabel McBride with remainder to G. Clifford Rice. This disposes of the specific objections to plaintiffs' title as claimed by de-

fendant. Counsel for defendant contends that even though we determine these specific objections in favor of plaintiffs, judgment should be given to defendant because the title is not "a good marketable and legal title". Counsel for defendant argues that our determination of the two specific objections to the title will not bar other interested parties from litigating the title. He urges that there is nothing to prevent the heirs of Josephine L. Yeager from instituting a legal proceeding against defendant were he to take a deed to the property. Defendant's counsel has cited the case of Srolovitz v. Margulis, 35 Pa. Superior Ct. 252, which holds that a vendee of real estate who was entitled under his contract to receive a marketable title, is under no obligation to take a title which, even if it might be finally determined to be good, was in a condition to involve him in litigation to establish or secure it. In the Srolovitz case there were two outstanding equitable estates and three mortgages encumbering the land and the vendor made no effort to clear the title. Other cases cited by counsel for defendant hold as follows: where there is a color of outstanding title which may prove substantial, a purchaser of a marketable title will not be required to encounter the hazard of litigation (Herman v. Somers et al., 158 Pa. 424); a vendee cannot be required to accept a title of doubtful marketability or one inviting the hazard of litigation at the hands of adverse claimants: Black et al. v. American International Corporation, 264 Pa. 260, 264; Bonebrake, Exr., et al. v. Koons, 333 Pa. 443, 5 A. 2d 184.

In all of the cases relied upon by counsel for defendant there was color of outstanding title which might prove substantial, doubtful marketability or a situation inviting the hazard of litigation at the hands of adverse claimants. Such is not the case in the present instance. There is no color of outstanding title which

might prove substantial. There are no circumstances which invite litigation at the hands of adverse claimants. While a vendee entitled to a marketable title cannot be compelled to purchase a threatened law suit based upon a color of title, alleged defects which are found to be nonexistent cannot be the means of escaping contract responsibilities. Where there is no reasonable doubt either at law or in fact as to good title, an adverse claim asserted in good faith and with a threat of litigation is not sufficient to invalidate an agreement requiring marketable title: Blanchard v. German Evangelical Protestant Church, 256 Pa. 242, 100 Atl. 804. In that case, plaintiff alleged defendant had breached an agreement to lease a certain tract of land in Pittsburgh and to furnish by a long term lease, a good and marketable title, based on the contention that in 1788 John Penn, Jr., et al. deeded the land in question to two religious societies or congregations for religious purposes, that the two congregations used the parcel alternately until about 1812 at which time the two congregations were consolidated and defendant ultimately became the successor of such consolidation. One of the church groups made active claims of ownership to a one-half interest in the property and appointed a committee to institute litigation in this matter. Plaintiff claimed that the Penns would have a reversionary interest in the property by reason of the fact that it was not used for religious purposes, because the title depended upon oral proof of merger of the original two grantees to form present defendant congregation and because of threatened litigation.

In the instant case there is no threatened claim by anyone and if such were made it would be manifestly and undoubtedly unfounded. See also Troy v. Kopetz, 77 D. & C. 508.

We are of the opinion that the title tendered by plaintiff is good and marketable and that plaintiffs'

motion for judgment on the pleadings should be granted. Pa. R. C. P. No. 1034 provides that after the pleadings are closed, any party may move for judgment on the pleadings and the court shall enter such judgment or order as shall be proper on the pleadings. Pa. R. C. P. 1037(c) provides that the court, on motion of a party, may enter an appropriate judgment against a party upon default or admission. In this case, defendant, in his pleadings, admitted all relevant and material allegations made by plaintiffs other than the marketability of title. There is no dispute as to any of the material facts relating to the title and the only issue presented is legal and not factual. Where the only issue raised by the pleadings is legal, the court may enter such judgment or order as shall be proper on the pleadings, when requested by either party.

At the oral argument, counsel for both parties agreed that defendant took possession of the premises in question prior to the date fixed for settlement and has remained in possession to this date. It would, therefore, be in order for the real estate taxes to be prorated in accordance with the written agreement.

We, therefore, conclude that plaintiffs are able to convey a good marketable and legal title to the premises, and we enter the following

*Order*

Now, April 10, 1954, judgment is entered in favor of plaintiffs, G. Clifford Rice and Ethel Rice, his wife, and against defendant, Arthur P. Shank, for the sum of $13,500, together with interest thereon from June 15, 1953, said sum and interest to be paid to plaintiffs upon delivery by them to defendant of a properly executed deed for the premises involved.