## Swanson Estate

*M. H. Kowallis,* for accountant.

*Chas. W. Herald,* for Commonwealth.

*Robert L. Becker, Jr.,* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for Protestant Home for Incurables.

RAHAUSER, J., May 20, 1955.—On or about May 20, 1948, Alma Jacobson Swanson made application for admission to the Protestant Home for Incurables, a nonprofit charitable corporation. On May 26, 1948, Miss Swanson executed an assignment of all her property to the said home and further agreed that, if she should thereafter become entitled to any money or property of any kind, she would execute all proper and necessary instruments of assignment and transfer of ownership of the same to the home so that the home would be the sole owner thereof, free of any claims by her. The contract of assignment further provided that if, upon demand, Miss Swanson refused to make any such assignment she would at once withdraw from the home and relinquish any and all claims under any payment or assignment theretofore made. At the date of

the assignment, i.e., May 26, 1948, neither Miss Swanson nor the home knew that she was entitled to a share of the estate of her great-uncle, John Aaron Benson, a resident of New Zealand, who died April 8, 1917. On July 19, 1948, Miss Swanson's application for admission to the home was approved and on August 2, 1948, she paid the admission fee of $1,250 provided for by the rules of admission of the home. Miss Swanson was admitted to the home on July 28, 1948, and resided there until her death on April 19, 1949.

After Miss Swanson's death her interest in her great-uncle's estate was discovered and on January 18, 1954, letters of administration were taken out on her estate. The administratrix of Miss Swanson's estate acknowledged the validity of the assignment and the home claims the entire balance for distribution pursuant to the assignment dated May 26, 1948.

The Commonwealth of Pennsylvania claims that the balance for distribution, consisting solely of funds received from the estate of Miss Swanson's deceased great-uncle, John Aaron Benson, is subject to inheritance tax. The Commonwealth's theory is that the property was "later-acquired property" and is subject to that part of the assignment which relates to property to which Miss Swanson might become entitled after the execution of the assignment. It is argued that Miss Swanson had the right under the assignment to refuse to assign such "later-acquired property" and to remove from the home. In other words, the assignment was not an absolute assignment of such "later-acquired property" and, hence, Miss Swanson retained an interest in it until the date of her death, thus subjecting it to the Pennsylvania inheritance tax.

The home maintains that there was an absolute assignment of the property in question on May 26, 1948, and that no interest therein passed to it when Miss Swanson died.

The language of the first clause of the assignment refers to "all my property and effects". It is absolute in character and is intended to refer to property then owned by the assignor, in contrast with a subsequent clause in the assignment referring to the possibility that the assignor "shall *hereafter become entitled* to any money or property of any kind". (Italics supplied.)

Since Miss Swanson's great-uncle predeceased her she was entitled to her share of his estate at the time she executed the assignment and so this property was actually property which she owned at the time she executed the assignment. However, neither Miss Swanson nor the home knew of this property at the time the assignment was executed. In effect the assignment was executed under a mutual mistake of fact as to an essential element involved, i.e., the quantity of the estate of the assignor. In view of this mutual mistake of the parties the assignment cannot properly be interpreted as conveying Miss Swanson's interest in the estate of her great-uncle—she probably would have had a right to rescind the assignment upon timely application, or at least would have had an equitable defense to an action for specific performance: A. L. I. Restatement of the Law of Contracts, §§501 and 502; Blygh v. Samson et al. (1891), 137 Pa. 368, 377, cited in Vrabel v. Scholler et al. (1952), 369 Pa. 235, 239. See also Fisher's Estate (1931), 302 Pa. 516, 525, citing Case v. Cushman, 3 Watts & Sergeant 544, 546.

In any event the property inherited by Miss Swanson from her great-uncle more nearly approximates "later-acquired property" than property owned by her, as contemplated by the parties, at the time the assignment was executed, and in our opinion, if she had learned of her ownership of an interest in her great-uncle's estate after the execution of the assignment, she would have had an option to execute an additional assignment of such property in favor of the home, or

to retain her interest in the estate and leave the home. Since she did not divest herself of her interest in her great-uncle's estate, such interest was subject to the Pennsylvania inheritance tax at the time of her death: Stone Estate (1952), 81 D. & C. 60, 65.