## Schmuckli's Estate.

Argued January 20, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*E. Russell Schockley,* Deputy Attorney General, with him *Harold E. Martin,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*F. Lyman Windolph,* of *Windolph & Mueller,* with him *Amos E. Burkholder,* for appellee.

38

Opinion by Mr. Justice Drew, January 31, 1941:

This case arose in the Orphans' Court of Lancaster County on an appeal from a supplemental transfer inheritance tax appraisement made by the Commonwealth.

Harry Schmuckli, a citizen of the United States and of Pennsylvania, died intestate at his home in the City of Lancaster on March 14, 1939, leaving to survive him certain heirs. As a World War veteran he had received from the government of the United States, and had in his possession at his death, twenty $50 U. S. of America 3% Adjusted Service Bonds of 1945, of the value of $1,082.42, including accrued interest. In a supplemental appraisement the bonds were listed, by the Department of Revenue, as assets subject to the Pennsylvania inheritance tax, under the Act of June 20, 1919, P. L. 521, and its amendments.

John Schmuckli, as administrator and as an heir of the estate of his brother, filed an appeal from the supplemental appraisement, claiming that it erroneously included for inheritance tax purposes the value of the Adjusted Service Bonds as a part of the estate of the decedent. After argument, the learned Orphans' Court of Lancaster County accepted this position, sustained the appeal, and struck out of the appraisement the Adjusted Service Bonds and accrued interest. The Commonwealth appealed.

The "World War Adjusted Compensation Act" of May 19, 1924 (38 USCA, Chapter 11, sections 591 et seq.) bestowed a bounty or gift (commonly known as the "Bonus") upon members of the military and naval forces who served this country during the World War. The amount awarded, which depended upon the length of overseas or home service, to each veteran was represented by an Adjusted Service Certificate made payable to him twenty years after the date of the certificate; or, upon the death of the veteran prior to the expiration of the twenty-year period, to the beneficiary named; or, if the beneficiary died before the veteran

and no new one was named, to the estate of the veteran. This statute, as amended July 3, 1926 (38 USCA, Chapter 11, section 618), further provided: "No sum, *payable* under this chapter to a veteran or his dependents, or *to his estate,* or to any beneficiary named under Part V of this chapter, no adjusted service certificate, and no proceeds of any loan made on such certificate shall be subject to attachment, levy, or seizure under any legal or equitable process, or *to national or State taxation,* and no deductions on account of any indebtedness of the veteran to the United States shall be made from the adjusted service credit or from any amounts due under this chapter." (Italics added.)

The Act of Congress of January 27, 1936 (38 USCA, Chapter 11A, sections 686 et seq.), under which the decedent in the instant case received the bonds here under consideration, declared that the Adjusted Service Certificates issued under the prior act, "are hereby declared to be immediately payable", and that payment should be made "upon surrender of the certificates and all rights thereunder" in $50 bonds, with a cash adjustment for odd amounts. These bonds were to mature June 15, 1945, but were redeemable, at the option of the veteran or his estate, at any time prior to that date. The statute further declared that the bonds should not be transferable, assignable, subject to attachment, levy, or seizure under any legal or equitable process, and should be payable only to the veteran or, in case of his death or incompetence, to the representative of his estate; and also provided: "In cases of deceased or incompetent veterans, the payments provided by this paragraph, whether of the amount certified, by issuance of bonds and by checks payable out of the fund created by section 645 of this title, or whether of such bonds on redemption thereof, shall be made to the person or persons determined by the Secretary of the Treasury to be lawfully entitled thereto, without the necessity of the appointment by judicial proceedings or otherwise

of a legal representative of the estate of any veteran or of any other persons, or of compliance with State law in respect of the administration of estates: *Provided,* That the amount of any such payment (including any payment heretofore made) which, under the law of the State or country pursuant to which the estate of the deceased veteran would be distributed, would otherwise escheat to such State or country, shall escheat to the United States and shall be covered into the general fund of the Treasury."

The Commonwealth contends that the Adjusted Service Bonds here in question are subject to the Pennsylvania transfer inheritance tax, since the Act of Congress of 1936, supra, authorizing their issuance contains no provision for immunity from national or State taxation, as does the Act of 1924, supra, relating to the issuance of the Adjusted Service Certificates. With this contention we do not agree, for it completely overlooks the Act of Congress of August 12, 1935 (38 USCA, Chapter 10, section 454a) which is still in full force and effect, and must be read in conjunction with the Act of 1936, supra. That statute provides: "Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans *shall* be *exempt from taxation,* shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, *either before or after receipt by the beneficiary.* Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments." (Italics added.) This latter statute applies to Adjusted Service Bonds, as well as to the funds received from their redemption, although this act was passed prior to the legislation authorizing the issuance of the bonds: *Culp v. Webster,* 70 Pac. (2d) 273. There-

fore, Congress (as it had done with respect to the Adjusted Service Certificates) directed payment of the bonds to the estate of the veteran, not as an asset thereof, but merely for the purpose of ascertaining the veteran's next of kin, and expressly relieved the bonds from taxation. See *Clement's Estate,* 160 Pa. 391; *Smith's Estate,* 8 D. & C. 639.

The further argument of the Commonwealth is that even if the bonds are expressly exempt from national and State taxation, they are still subject to the provisions of the Transfer Inheritance Tax Act, because of the inherent nature of that legislation. It is well settled, as argued by the Commonwealth, that an inheritance tax is not a tax upon the property itself, but rather a tax on the succession or right of inheritance of the assets of the estate of a decedent: *Tack's Estate,* 325 Pa. 545. That principle has no application here, for Congress has endowed these bonds with special characteristics which show a clear intent, particularly since the veteran did not exercise his right to redeem the bonds during his lifetime, that the estate was used as a mere conduit through which the gratuity was to pass to the ultimate donees thereof. The bonds, therefore, were not such part of the veteran's estate as would make them subject to a transfer inheritance tax. What this Court said in *Fisher's Estate,* 302 Pa. 516, with reference to the commuted value of war risk insurance, is equally applicable to the unredeemed bonds in the instant case. There, it was said (pp. 522-523): "If we keep in mind the purpose and cause for the creation of war risk insurance we will better understand the subject. The primary object was to aid the soldier and his relatives within a limited class; it was given . . . in recognition of services the soldiers were giving for their country. It might be called a bounty, donation, or a gift. . . . The fund arising from war risk insurance is an earmarked fund that has impressed on it the quality given to it by the United States Government—the qual-

ity of a national donation, bounty, or gift for services in defense of the nation. The fund may be traced through the various agencies until it reaches its final destination in consummation of the original purpose for its creation. The badge of national obligation to a soldier protects it from liability for taxes, debts and the like; these attributes control the instant case. . . . Congress was not interested in setting up a fund for creditors and excisors."

In *Wanzel's Estate,* 295 Pa. 419, it was held that a direct inheritance tax could not be assessed against unmatured installments of war risk insurance paid by the federal government to a deceased soldier's estate to be distributed in accordance with the intestate laws. There we said (pp. 423-424) : " 'It is reasonable to assume that the purpose of Congress in making the payment to the administrator of the deceased soldier was for the benefit of the government, to relieve the government of the necessity of selecting and determining the next of kin of the deceased soldier to whom payment should be made, and to place this burden upon the administrator appointed in the state of the soldier's residence. The administrator becomes a mere trustee or conduit for the government to make the payments to the persons entitled to the same under the provisions of the federal law. The intestate laws [of the state] do not operate upon the decedent's property, but are referred to in order to determine who shall take the proceeds of the insurance. . . .' "

The Transfer Inheritance Tax Act, supra, as last amended by the Act of July 14, 1936, P. L. 44, imposes a tax "upon the transfer of any property, real or personal, . . . to persons or corporations . . . when the transfer is by Will or by the intestate laws of the Commonwealth. . . ." There was no transfer *by will or by the intestate laws* of these Adjusted Service Bonds: they passed to the heirs of the decedent, his brothers, as the ultimate donees of the bounty of the national govern-

ment, not by virtue of the intestate laws of this Commonwealth, but by reason of the terms of an Act of Congress; for which reason, it seems clear, that no tax is due and that the decree entered in the court below must be affirmed.

Decree affirmed, each party to severally pay its or their own costs.