### Oberholzer's Estate

*Bernard J. Myers*, for appellant.
*Harold E. Martin*, for appellee.

APPEL, P. J., January 29, 1943.—An appeal has been filed in this court from an appraisement for transfer inheritance tax, in this estate, of two adjoining properties known and described as nos. 414 and 416 North Mulberry Street, Lancaster, Pa., at a valuation of $5,000.

No objection is made to the value of the property, but it is contended that said real estate was not a part of decedent's estate at the time of her death and consequently is not taxable under the transfer inheritance tax law.

From a stipulation or agreement of facts on behalf of appellant and the Commonwealth it appears that these properties, being owned by decedent, were by her deed, dated July 11, 1938, and recorded in the recorder's office at Lancaster, Pa., for the consideration of $3,500 granted and conveyed to Charles S. Zwally, trustee for the use of Joseph C. McKendrick, a minor. In this deed appears the following provision:

"Under and subject to the free and uninterrupted right and privilege to use and occupy the herein de-

scribed premises by the said Margaret Arnold Ober-
holzer for and during the term of her natural life; and
at her death, William J. McKendrick, father of the
grantee herein, shall have the free and uninterrupted
right and privilege to use and occupy the herein con-
veyed premises for and during the term of his natural
life."

A hearing was had in this matter and, subsequently,
at the request of the attorney for the Commonwealth,
a rehearing was had. At the rehearing William J. Mc-
Kendrick, the father of the grantee in the deed, who
also, under the above-recited deed, has a certain right
for his life in said property, was called as a witness.
From his testimony it appears that the grantee was
born on July 24, 1921, and is, therefore, now of age, and
that Margaret Arnold Oberholzer was between 76 and
78 years of age when she died. (It has been ascertained
that she was born on February 19, 1864, and was ac-
cordingly 78 years, 3 months, 12 days of age at her
death.) This witness was born on April 21, 1880. He
was, therefore, 62 years of age when his life interest in
said property arose on the death of Margaret Arnold
Oberholzer on May 31, 1942.

The decedent occupied no. 416 North Mulberry Street
and collected the rent from no. 414 North Mulberry
Street. This witness and his son, Joseph C. McKen-
drick, were no blood relation of decedent, but had re-
sided with her for about 15 years, paying board and
room rent at the rate of $5 per week for each of them.
This was paid until Margaret Arnold Oberholzer died.
The son was 12 years old when they began to reside with
Mrs. Oberholzer in this property, and they continued
to reside with her until she died. "I tended the furnace
and different things like that, and kept the yard mowed,
whatever was to be done around the house, I done it for
her." The son left to go into the Army on August 14,
1942, after decedent's death. This witness knew noth-
ing about the deed transaction, which was done when

he was not at home. The witness testified as to the health of decedent at the time of the date of the deed, when she was ailing and was sick for a period of about seven years until she died from arthritis and dropsy. At first she was confined to the upstairs and then a bed for her was put downstairs, which she used and did not go upstairs. At the end she was confined to bed about three weeks. The witness and the son for some time carried her from room to room. The witness took care of her for about seven years and the son about four years. Charles Zwally, the trustee for the son in the deed, the executor of her will, a relative to decedent through marriage, "tended to her work, or handled her money". The witness knew that the deed for the property was made, and testified as follows:

"Q. And at or about that time was Margaret Arnold Oberholzer fearful of an immediate death, immediate proximity of death, that she was going to die promptly?

A. You mean that she thought she was going to die?

Q. At that time?

A. No, she always held that she was determined— but she was ailing at that time.

Q. But there was nothing in her physical condition that led her to believe that she was going to drop over quickly?

A. No. She was determined and everything."

Margaret Arnold Oberholzer died on May 31, 1942, a widow, childless, and survived by no descendants. She left a will dated July 25, 1938, duly probated, and letters testamentary thereon were granted to Charles S. Zwally, the executor named therein. In her will she bequeathed the contents of her dwelling house (except a bureau which she bequeathed to her stepdaughter, Alta Black, which formerly belonged to Harry Oberholzer, her father) to William J. McKendrick. She directed the remainder of her estate to be converted and she disposed of the proceeds to legatees specifically named, and

the remainder to Kathryn Zwally and Arnold Zwally in equal shares. In her will she made no particular or specific reference to the Mulberry Street premises nor any devise of the same. The property, having been previously conveyed by her, did not pass under the will. It was, however, valued and appraised for transfer inheritance tax purposes as the property of decedent.

Section 1 of the Act of June 20, 1919, P. L. 521, as amended by several acts and by the Act of July 14, 1936, P. L. 44, 72 PS §2301, provides:

"That a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases:

"(a) When the transfer is by will or by the intestate laws of this Commonwealth from any person dying seized or possessed of the property while a resident of the Commonwealth, whether the property be situated within this Commonwealth or elsewhere. . .

"(c) When the transfer is of property made by a resident, or is of real property within this Commonwealth . . . by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

Section 45 of the Act of 1919, 72 PS §2461, contains the following definitions:

"The words 'estate' and 'property,' wherever used in this act, except where the subject or context is repugnant to such construction, shall be construed to mean the interest of the testator, intestate, grantor, bargainer, or vendor, passing or transferred to the individual or specific legatee, devisee, heir, next of kin, grantee, donee, or vendee, not exempt under the provisions of this act, whether such property be situated within or without this Commonwealth.

"The word 'transfer,' as used in this act, shall be taken to include the passing of property, or any interest therein, in possession or enjoyment, present or future, by distribution, by statute, descent, devise, bequest, grant, deed, bargain, sale, or gift."

This court finds that the transfer in question was not made under the provisions of clause (*a*) of section 1 of the act nor was it made in contemplation of the death of the grantor under that provision of clause (*c*) of said section 1.

Was this a taxable transfer "intended to take effect in possession or enjoyment at or after" the death of Mrs. Oberholzer?

In Tack's Estate, 325 Pa. 545, the Supreme Court, in discussing the provisions of the Act of June 20, 1919, P. L. 521, at page 547, by Mr. Justice Stern, said:

"A study of the origin of such taxation, and of the cases construing our own legislation over a course of many years, makes it readily apparent that the inheritance tax is not one on the *transfer* of specific property, as such term is ordinarily understood, but is of an entirely different nature.

"The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of law agree that the State has the right to declare an escheat of *all* the property of a decedent, and therefore, as the price of allowing a legatee, devisee or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. Whether this appropriation be designated an inheritance tax, an estate tax, a succession tax, a death duty, or otherwise howsoever, it is not, in its essence, a tax on the decedent's property or any component part of it, or on the transaction of transferring it as in the case of a transmission of possession or title inter vivos, but an excise on the privilege of inheritance. It is really not a tax at all in the ordinary

meaning of the word, but rather a distributive share of the estate which the State retains for itself. Its true nature is not changed by the fact that it is assessed and measured by the value of the property, or that it is paid by legatees and devisees in proportions allocated to their respective inheritances.

"The inheritance tax acts of Pennsylvania, beginning with that of April 7, 1826, P. L. 227, have uniformly been construed from this standpoint."

This court continued to quote from the case of Strode v. Commonwealth, 52 Pa. 181, and at page 548 of the Tack case said:

" 'The act (imposing the collateral inheritance tax) operates only on the *residue* of the estate after paying debts and charges, and, theoretically, that residue is always a balance in money. The administration account always exhibits a balance in cash not in specific goods, whether bonds or horses; and though an heir may take bonds or horses as cash, the account must show, and always does show, a cash balance. That is the fund taxed by this law, and not the bonds or other chattels which may have produced the fund.' "

The following three cases are cited in the Tack case:

"In *Orcutt's Appeal*, 97 Pa. 179, 185, it was said: 'The tax does not attach to the very articles of property of which the deceased died possessed. It is imposed on what remains for distribution after expenses of administration, debts and rightful claims of third parties are paid or provided for. It is on the net succession to the beneficiaries and not on the securities in which the estate of the decedent was invested.'

"In *Commonwealth v. Herman*, 16 W. N. C. 210 . . . the court held . . . by Sadler, President Judge . . . the State 'may properly provide that a portion of the estate should escheat to it and the remainder go to the heir; and the portion which the State reserves or compels the administrator or executor to pay to it, is not

a tax upon the specific property, of which decedent may die seised, or which the collateral heirs, legatee or devisee may take, but a tax or duty levied upon the *estate as such*, which may remain after the debts and expenses of administration are provided for; and in construing its character it is proper to remember that it is connected with and is a part of the legislation of the Commonwealth in reference to the administration and transmission of estates of decedents.'

"In *Finnen's Estate*, 196 Pa. 72, it was said: 'That which the legatee gets and keeps is the aggregate sum bequeathed, less the amount of the tax. The tax must be retained by the person who has the decedent's property in charge. It is, therefore, not a tax upon the property or money bequeathed but a diminution of the amount that otherwise would pass under the will . . . , and hence that which the legatee really receives is not taxed at all. It is that which is left after the tax has been taken off.' "

To similar effect as the foregoing citations are: Jackson et al. v. Myers, Guardian, 257 Pa. 104; Kirkpatrick's Estate, 275 Pa. 271; Frick's Estate, 277 Pa. 242; Shugars et al. v. Chamberlain Amusements Enterprises, Inc., 284 Pa. 200. In this last case the court said (p. 205) :

"Though commonly called a direct inheritance tax, yet, under the Act of 1919, the thing taxed was the right of succession or the privilege of receiving at death the property possessed by a decedent either by will or under the intestate laws. The fundamental thought was to levy a toll against the passing of property of citizens going by reason of death to others in whatever light the taking may be viewed."

In Schmuckli's Estate, 341 Pa. 36, 41 (1941), it was said: ". . . an inheritance tax is not a tax upon the property itself, but rather a tax on the succession or right of inheritance of the assets of the estate of a decedent".

In a discussion of the present problem the rights, interests or estates of three different persons in the appraised property are involved: (1) Mrs. Oberholzer, the grantor in the deed, now the decedent; (2) Joseph C. McKendrick, by virtue of a deed of Mrs. Oberholzer in her lifetime, owner of the appraised property; and (3) William J. McKendrick, life tenant under the deed after the death of Mrs. Oberholzer.

According to the above statement of facts Mrs. Oberholzer, being the owner absolutely and in fee simple, executed and delivered a deed for said property for a valuable consideration. By this deed title to said real estate vested in Joseph C. McKendrick. In this deed the right to use and occupy said real. estate for her lifetime was reserved in her. Undoubtedly the fact that this life estate with all the rights and privileges thereto belonging was taken into consideration when the amount of the purchase price was fixed resulted in an allowance or deduction in the purchase price somewhat equivalent to the value of the life estate. To the extent of this allowance or deduction the grantor may be said to have purchased her life estate, at all events these parties were satisfied. But in acquiring said right to use and occupy said premises she acquired no title upon the death of any person. She, therefore, acquired by said deed no title or estate, interest or right thereto from any decedent which constituted such a transfer as under the Act of 1919 and its amendments required a payment to be made for the right of succession or privilege of receiving at death the property which was possessed by a decedent.

Upon the death of Mrs. Oberholzer no title to said property or estate or interest therein became vested in the said Joseph C. McKendrick. He had already acquired title to said real estate as a purchaser for a valuable consideration from a living person. He acquired his title or possession or enjoyment thereof from

no decedent, and no title was transferred to him by will or descent or the intestate laws, and as to him there was no transfer of property made in contemplation of the death of Mrs. Oberholzer or intended to take effect in possession or enjoyment at or after her death. Upon his own death, under Mayer's Estate, 330 Pa. 39, whatever estate passes from him would be taxable in the possession of those persons who succeed to his title. However, he is still living and any question as to taxability upon his death does not arise at this time.

The third person who has an interest in the estate to this property is William J. McKendrick, who acquired a life estate in the property by virtue of a deed executed by Mrs. Oberholzer, to which his son was a party. He entered into possession and enjoyment of this estate by the death of Mrs. Oberholzer. He is the only person who may be said to have acquired any estate or interest therein by reason of the death of any person. Even as to the taxability of his estate some doubt existed for the reason that under the deed, to which there were two parties, it cannot be said that the creation of this life estate was due *solely* to the act of the grantor, but was equally created by the grantee in the deed. The grantee bought and paid for the property with that reservation in the deed. It was part of his contract and the consideration therefor. And so far as he created that estate it was created by a living person, and as to him there was no transfer arising by death. However, as to the grantor in the deed the circumstances are otherwise. William J. McKendrick paid no consideration for his life estate and as to him that estate was personally a gift. Moreover as to him the gift came into existence and exercise by reason of the death of the grantor. It did not come into being by will or the intestate laws. And in a general sense he cannot be said to have *inherited* it upon any death. However, in a very narrow sense he can be said to have acquired some interest therein by a taxable transfer.

At the expiration of the life estate of Mrs. Oberholzer a similar life estate was reserved to William J. McKendrick. Upon the death of Mrs. Oberholzer her life estate terminated and became extinguished, at which time by the terms of the deed William J. McKendrick entered into the use and possession of the property. The only estate or interest which may be said to have been transferred upon the death of Mrs. Oberholzer was the right of William J. McKendrick to use and occupy this property for his lifetime, and it was this right to use and occupy said premises which was "intended to take effect in possession or enjoyment at or after" the death of Mrs. Oberholzer.

This court finds that this life tenant should pay an excise on the privilege of inheritance, which has been expressed as a toll for his right to come or pass on to the use and occupancy of the real estate which arose eo instanti at the death of Mrs. Oberholzer. In the Shugars case, supra, this was expressed in the following words (to repeat) :

"The fundamental thought was to levy a toll against the passing of property of citizens going by reason of death to others in whatever light the taking may be viewed."

What is the value of the interest passing to the life tenant?

This court finds that his estate in said premises is a life estate which is liable for transfer inheritance tax. The amount of his tax would be computed on the life estate at the age of 62 years based on the principal of $5,000. According to the annuity tables the value of this life tenancy at his age would be $1,991.50, on which the tax at 10 percent would amount to $199.15.

According to law this tax on the life estate of William J. McKendrick would *not* be a lien on the property of Joseph C. McKendrick. As has been said previously, upon the death of this life tenant there would be no

taxable transfer of the property to Joseph C. McKendrick, because he had acquired title to the property for a valuable consideration, not from his father, William J. McKendrick, but as a purchaser from Mrs. Oberholzer, according to a deed dated, executed, delivered, and recorded nearly four years before the date of the death of the present decedent, and his title and possession or enjoyment of the property did not accrue upon the date of the death of the present decedent.

When a testator devises a property, subject to a life estate, to remaindermen the devise takes effect at the date of the death of the testator, and the right and estate of both the life tenant and the remaindermen has its origin in the provisions of the will. Neither the life tenant nor the remainderman is a party to the transaction on any basis like a contractual relation, but each one is solely a recipient of a bounty or a gift without consideration. In this respect the remainderman may be said to receive an inheritance. But when the remainderman become a remainderman by virtue of a contract for a consideration to which he is a party, and thereby to all intents and purposes joins with the other party to the contract in establishing a particular estate, such as a life estate, such life estate does not spring into existence in the same manner as a life estate which may be established ex parte, as in a will.

Suppose Joseph C. McKendrick, for a valuable consideration, by a deed from Mrs. Oberholzer had become the owner of the property in question and no reservation or life estate to any person had been made in said deed. Certainly no contention could be made that such a transfer of title would be subject to a transfer inheritance tax. Now suppose that transaction were completed and, being absolute and sole owner in simple title in said real estate, thereafter Joseph C. McKendrick had executed and delivered to his father, who was not a party to the original deed, another document, deed, or lease whereby, as a gift from the son, the father had

the right to use and occupy said premises during his lifetime, and at the death of the father such right to use and occupy said premises would cease, terminate, and end and the property be released, discharged, exonerated from such use, could it be seriously contended that thereupon the property then reverting to the possession of the owner would be subject to the payment of transfer inheritance tax? Where would exist any such taxable transfer? Where would any transfer come into existence by reason of any death? Joseph C. McKendrick would be in the same situation as he was before he created the life estate, and there would be nothing transferred to him by the death of his father. The said Joseph C. McKendrick in the instant case is in the same situation as in the last hypothetical case, and he is in the situation because he was a party for a consideration to the original transaction. There is no taxable transfer liability on Joseph C. McKendrick or his present or future ownership, or possession of said property.

In Krause's Estate, 325 Pa. 479, at page 483, the Supreme Court quotes Barber's Estate, 304 Pa. 235:

" 'It is not the function of a judicial tribunal "to impose taxation, which is a species of confiscation, by a strained construction of doubtful legislation." . . . If there is doubt or uncertainty as to the imposition of the tax, that doubt or uncertainty should be resolved in favor of the taxable.' "

In the present appeal appellants have asked this court to interpret and apply the provisions of decedent's will containing the following item:

"Fourteenth: I direct that all transfer inheritance, including all taxes on any and all life estates, shall be paid by my executor out of my residuary estate."

In the fifth item of said will testatrix orders and directs the executor of her estate to convert the remainder of her estate into money and makes testamentary disposition of the same, providing, inter alia,

two life estates in the income of $5,000 each, and directing distribution of the principal of both funds after the death of the life beneficiaries.

While it may be the present opinion of this court that the provisions of the fourteenth item of the will may relate only to decedent's estate of which she makes disposition in her will, this question cannot be determined in this proceeding. This question must be disposed of at such time as the executor's account will be before this court for audit, adjudication, and distribution. The executor is not now before this court and is not a party to this proceeding. He is not an appellant herein. The present contest is between the Commonwealth, which asserts transfer inheritance tax liability, and those parties who contest that liability. See Ely's Estate, 28 D. & C. 663.

The present appeal is sustained to the extent that the valuation of the whole interest or estate in said property as a transfer from Margaret Arnold Oberholzer has been fixed at $5,000, and the valuation thereof is reduced and now fixed at the sum of $1,991.50 as the value of the right on the part of William J. McKendrick to use and occupy said property for and during the term of his natural life. The costs of this appeal should be paid out of the estate.