## Veterans' Bonus and Public Assistance

RUTHERFORD, Deputy Attorney General, February 21, 1950.—You ask to be advised whether bonus payments under the World War II Veterans' Compensation Act of June 11, 1947, P. L. 565, 51 PS §455.1 et seq., should be treated as an asset or resource and public assistance payments discontinued until the resource is exhausted.

Authorization of a debt of $500,000,000 for payment of bonus to certain persons (veterans) for "service of such persons to their country" was provided for by a constitutional amendment passed by two legislatures (1947 and 1949) and approved by the electorate by an overwhelming majority.

Governor Duff, in his budget message to the 1947 General Assembly, requested consideration at the 1947 session of a bonus for veterans of World War II in the following language:

"An important subject to be considered in this Session is that of *a bonus* for veterans of World War II. I recommend that a resolution for a bond issue be passed at this Session in sufficient amount to pay a fair and liberal *bonus* to all veterans. . . ." (Italics supplied.)

Section 8 of the World War II Veterans' Compensation Act, supra, 51 PS §455.8, provides for certain exemptions as follows:

"Exemption from Attachment, Etc.: *No sum payable under this act to a veteran, or to any other person under this act, shall be subject to attachment, levy or seizure under any legal or equitable process and shall be exempt from all State taxation. No right to compensation under the provisions of this act shall be assignable,* except as hereinafter provided or serve as

a security for any loan. Any assignment or loan made in violation of the provisions of this section shall be held void: Provided, That assignments to any group or organization of veterans, incorporated or unincorporated, or to any nonprofit corporation, heretofore formed solely for aiding disabled or incapacitated veterans and assignments to the State Veterans' Commission shall be valid. The State Veterans' Commission is hereby authorized to accept such assignments, which shall be treated as confidential, and the funds realized from such assignments shall be expended by said commission solely for the aid of needy veterans and their families. *Except as in this section provided, the Adjutant General shall not direct the payment, nor shall payment be made, under this act to any person other than a veteran or the representatives of a veteran as in this act provided.*" (Italics supplied.)

Section 6, par. (*a*) of the act covering payments to representatives of veterans who are mentally ill contains the following proviso:

". . . Provided, That no part of such compensation shall be paid to any county or State institution for the maintenance of the veteran. . . ."

Section 9 of the act provides penalties for persons who charge or collect, or attempt to charge or collect, either directly or indirectly, any fee or other compensation for assisting in any manner a veteran in obtaining any of the benefits to which he or she is entitled under this act. Such charges or attempts are designated as misdemeanors, and upon conviction the guilty persons are subject to fine and imprisonment.

From the above, it is clear that it was the intention of the legislature that the bonus payment was to be a bounty, donation or gift for service in defense of country, free of liability or seizure by process of any kind, legal or equitable, receivable by the veteran for his or her personal use and enjoyment.

It is completely different from money earned or inherited which constitutes an asset or resource under the Public Assistance Law but is untouchable except by the veteran himself or those dependents expressly named in the act.

To treat the bonus as an asset or resource and to discontinue assistance to a veteran would be, in effect, an equitable seizure forbidden by the Veterans' Compensation Act, supra. The result would be a circumvention of the clear legislative intent. The words "attachment, levy or seizure" are not to be construed so narrowly as to embrace only process in the hands of an officer for service. See Mahar v. McIntyre, 16 F. Supp. 961 (1936) (Mass.).

Moreover, we do not find any authority given to the Department of Public Assistance, or any other department or agency, to direct the manner in which the money received under the Veterans' Compensation Act should be expended. To the contrary, the language of the act shows a clear intention to aid and reward the veteran or his relatives within a limited class. Because the bonus is obviously a gratuity, donation, or bounty for services rendered in defense of country, the Commonwealth should not award the gift with one hand and take it away with the other. Under the law, this should not, and in our opinion cannot, be done. Such action would offend accepted ideas of what is right and just in human relations. In Busser et al. v. Snyder et al., 282 Pa. 440 (1925), the Supreme Court of Pennsylvania, at page 449, said:

"Pensions or gratuities . . . are in the nature of compensation for a special and highly honored service to the State, implying the idea of *a moral obligation* on the part of the government; . . ." (Italics supplied.)

Such moral obligation should not be violated by the sovereign through indirection.

The courts of other States hold that a bonus payment is to be treated as different from compensation in the ordinary sense. In People v. Westchester National Bank, 231 N. Y. 465, 132 N. E. 241, the court says:

"The payment of a pension or a bonus for past services showing the gratitude of the people, showing that the state is mindful of those who have made sacrifices for it, is an incitement to patriotism, and an encouragement to defend the country in future conflicts. . . ."

In State ex rel. Atwood v. Johnson, 170 Wis. 251, 176 N. W. 224, the Supreme Court of Wisconsin, in upholding the constitutionality of the State's Educational Bonus Law, says at page 256 of its opinion:

"Nor is the gift here made an extra compensation for services rendered, though it must be admitted that a pure gratuity is sometimes called extra compensation, but such compensation, strictly speaking, is given to reimburse the recipient financially for service rendered so that the total money consideration will equal the money value of such service. Its whole sanction lies in the fact that inadequate financial compensation was given in the first instance, and that in order to make it adequate additional compensation must be made. It is granted purely on a money basis without regard to its effect upon the donor, the recipient, or the general public. *A gift like this rests upon no such foundation. Its purpose is not to make the soldier financially whole, but to express gratitude and stimulate love of country in those that give, in those that receive, and in the public at large to the end that an impressive object lesson in patriotism may be engraved in the hearts of all.*" (Italics supplied.)

and at page 260:

"If, as held in the Cash Bonus Case . . . , the giving of money to soldiers, *which they may spend as they choose, is a public purpose*, much more so must be the giving to them of an education. . . ." (Italics supplied.)

See other cases in accord cited in the annotation found at page 1644 of 7 A. L. R.

In Schmuckli's Estate, 341 Pa. 36, 41-42, 17 A. (2d) 876 (1941), Mr. Justice Drew, speaking for our Supreme Court, in construing language similar to that contained in the above-cited section 8 of the World War II Veterans' Compensation Act, held that the adjusted service bonds were not an asset of the estate of the veteran and hence were not subject to transfer inheritance tax. The following language used by Mr. Justice Drew is appropriate to our problem:

"Congress has endowed these bonds with special characteristics which show a clear intent, particularly since the veteran did not exercise his right to redeem the bonds during his lifetime, that the estate was used as a mere conduit through which the gratuity was to pass to the ultimate donees thereof. The bonds, therefore, were not such part of the veteran's estate as would make them subject to a transfer inheritance tax. What this Court said in Fisher's Estate, 302 Pa. 516, with reference to the commuted value of war risk insurance, is equally applicable to the unredeemed bonds in the instant case. There, it was said (pp. 522-523) : 'If we keep in mind the purpose and cause for the creation of war risk insurance we will better understand the subject. *The primary object was to aid the soldier and his relatives within a limited class; it was given . . . in recognition of services the soldiers were giving for their country. It might be called a bounty, donation, or a gift. . . . The fund arising from war risk insurance is an earmarked fund that has impressed on it the quality given to it by the United States Government [here the Pennsylvania Legislature]—the quality of a national donation, bounty, or gift for services in defense of the nation.* The fund may be traced through the various agencies until it reaches its final destination in consummation of the

original purpose for its creation. The badge of national obligation to a soldier protects it from liability for taxes, debts and the like; these attributes control the instant case. . . . Congress was not interested in setting up a fund for creditors and excisors.' " (Italics supplied.)

If the World War I adjusted compensation bonds, irrespective of whether they are expressly exempted by the statute from taxation, cannot be considered as an asset on which taxes can be collected, certainly we cannot treat the bonus as an asset or resource to declare an applicant or recipient of public assistance ineligible until the asset or resource has been exhausted. This would be contrary to the act of assembly and serve to defeat the purpose of the bonus legislation.

Because the bonus given under the 1947 Act is a gratuity free of equitable seizure, the veteran or enumerated dependents receiving the bonus should not be subject to a discontinuance of public assistance; to rule otherwise would mean that these veterans would not, in reality, be receiving the bonus and this would make the Veterans' Bonus Act, providing for the payment of the bonus, as to them, meaningless. This is contrary to section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552, which reads, in part, as follows:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others;

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"(2) That the Legislature intends the entire statute to be effective and certain;"

The foregoing requires the question submitted to be answered in the negative. However, we add further

considerations that militate against a contrary conclusion.

To make bonus payments enjoyable only by veterans gainfully employed or possessed of independent means, and who thus have their own source of subsistence, and deny enjoyment thereof to those who are unemployed, or without financial means and, therefore, compelled to resort to public assistance, would inequitably favor those who have against those who have not, and subjects bonus payments to a condition neither expressed nor implied in the Bonus Act.

Article III, sec. 18, of the Pennsylvania Constitution prohibits appropriations for charitable, educational or benevolent purposes, with certain exceptions, e.g., "gratuities for military services". This provision was construed in Kurtz v. Pittsburgh et al., 346 Pa. 362 (1943), wherein an act was declared unconstitutional insofar as it provided for the payment to certain dependents of a portion of the salaries of public employes in the armed forces. The court said (pp. 372, 381, 382) :

"Article 3, section 18, of the constitution permits appropriations for pensions or gratuities for military services, but when such appropriations are made, *they cannot arbitrarily be made to favored individuals.* If, for example, the legislature should grant pensions or gratuities for military services to those who in this war serve in the nation's armed forces in the Pacific-Asia area of combat operations and deny such pensions or gratuities to those who serve in the nation's armed forces in the Atlantic-Europe-Africa area of combat operations, no court would hesitate to pronounce such a classification unreasonable and unconstitutional. . . .

"*The people of Pennsylvania never authorized the creation by the legislature of a class of persons to receive gratuities from the public treasury* and consist-

ing only of those soldiers, sailors and marines who before becoming such were public employees. To authorize 'pensions or gratuities for military services' to all who render such services is one thing; to interpret such a provision as authorizing gratuities to that small percentage of persons now in war service but who were public employees is so obviously a different thing that it should require no argument to point it out. The legislature has no more warrant under the constitution of this Commonwealth to grant pensions and gratuities only to its former employees now in the national service than it would have to grant pensions and gratuities only to college graduates or former carpenters now in the national service. . . ." (Italics supplied.)

The court then concluded (page 385) that the legislation challenged is class legislation, contrary to article III, sec. 7 of the Constitution of Pennsylvania, which prohibits any local or special law "granting to any . . . individual any special or exclusive privilege or immunity".

It can be fairly contended that the gratuities (bonus payments) provided by the World War II Veterans' Compensation Act will be available only to a favored class of self-sustaining veterans, if public assistance payments to indigent veterans are halted upon receipt by the latter of the bonus, and that such difference in treatment would result in granting a special privilege based on economic status. Such was clearly not the intention of our legislature.

It would seem incompatible with the moral obligation of our State Government to discriminate against the needy veteran by requiring him to use his veteran's bonus for subsistence, when the self-sustaining veteran may use his bonus at his own will and discretion.

Turning to article IX, sec. 5 of the Pennsylvania Constitution, we find:

"All laws, authorizing the borrowing of money by and on behalf of the State, shall specify the purpose for which the money is to be used, *and the money so borrowed shall be used for the purpose specified and no other*." (Italics supplied.)

The funds borrowed under the constitutional amendment and the Act of May 18, 1949, P. L. 1451, authorizing the issue and sale of bonds pursuant thereto are for the sole purpose of the payment of bonus to veterans. However, if it is ruled that an indigent veteran becomes ineligible for public assistance upon receipt of his bonus, the effect will be to require such indigent veteran to use his bonus for subsistence, i.e., substitute this money for the money he would have received from public assistance. This is tantamount to using the veteran's bonus for public assistance purposes—a purpose for which the money was not borrowed.

The Commonwealth has created two obligations in favor of an indigent veteran: (1) To reward him for service to his country, and (2) to provide public assistance. Both of these obligations should not be discharged with the same money. If they were, the Commonwealth would be extending the bonus in one hand, and withdrawing the assistance being furnished by the other hand. This would force the indigent veteran to use his bonus for subsistence.

Thus, while the various acts providing for veterans' bonus, standing alone, are constitutional, the blending of those acts with the public assistance laws and the administrative interpretation of the functions thereof, may possibly effect an unconstitutional result, if the veterans' bonus is regarded as a resource by the Department of Public Assistance. Where there are two constructions which can be placed upon an act of assembly, one of which will make it constitutional and the other unconstitutional, the former will

always be preferred: Fidelity-Philadelphia Trust Co. et al. v. Hines, 337 Pa. 48 (1940).

It is our opinion, and you are accordingly advised, that under the Act of June 11, 1947, P. L. 565, 51 PS §455.1 et seq., the bonus payment should not be treated as an asset or resource, and assistance should not be discontinued because of the bonus payment.