## Maguire Estate (No. 2)

*Michael L. Temin*, Assistant United States Attorney, for appellant.

*Irvin Stander*, Special Assistant Attorney General, and *Hugh P. Connolly*, for appellee.

SHOYER, J., April 22, 1960. — This appeal by the Federal government raises the question whether the deceased veteran's estate, which this court previously awarded to the Federal government as trustee for the General Post Fund pursuant to the Act of Congress of June 25, 1910, c. 384, 36 Stat. 736, as amended, 38 U. S. C. §§5220-5228, is subject to the payment of Pennsylvania Inheritance Tax.

The facts are not in dispute. They are recited in the petition and answer sur this appeal, and also in an earlier opinion of this court wherein the fund involved was awarded to the Federal government: Maguire Estate, 13 D. & C. 2d 247.

John J. Maguire, a resident of Philadelphia, and a veteran of the First World War, died intestate December 15, 1953, at the United States Veterans' Hospital, Perry Point, Md. Letters of administration of his estate were granted by the Register of Wills of Philadelphia, and the account of the administrator was audited before President Judge Klein. The Commonwealth of Pennsylvania appeared at the audit of the account and claimed decedent's estate as "heir" under section 3(6) of the Intestate Act of April 24, 1947, P. L. 80, 20 PS §1.3(6), there being no surviving next of kin of the veteran closer than second cousins. The Federal government claimed the estate under the provisions of the aforementioned Federal statutes. The

auditing judge, believing himself governed by the decision of our Supreme Court in Skriziszouski Estate, 382 Pa. 634, awarded Maguire's estate amounting to $21,138.73 to the Federal government pursuant to the Act of Congress; this, notwithstanding, that one-third of the fund was derived by decedent by way of inheritance, one-third was derived from the payments by the Veterans' Bureau and the remaining one-third was composed of the accumulated income.

The Commonwealth's exceptions to this award were dismissed unanimously by this court in an opinion by Saylor, J., as above cited. An appeal, taken by the Commonwealth to the Pennsylvania Supreme Court, was later withdrawn.

On July 9, 1958, an inheritance tax appraisement was filed by the register of wills wherein he assessed a tax in the sum of $3,170.81, being at the rate of 15 percent on the above $21,138.73 awarded to the Federal government, together with interest at the rate of six percent from December 15, 1954.

This appeal followed. Upon petition of the government a citation issued to which an answer was filed by the Commonwealth. During the hearing on this appeal it was agreed that the entire record having to do with the audit of the estate of John J. Maguire, deceased, in this court and the entire record in the proceeding in the common pleas court on the guardianship of John J. Maguire, a feeble-minded person, should be incorporated in this proceeding by reference.

These records additionally establish, as recited by Judge Saylor in his opinion for this court en banc, that Maguire received an "ineptitude discharge" from the United States Navy in 1918 and was committed to the State Hospital at Norristown where he remained as a patient until 1928. In 1922 he became a hospitalized beneficiary of the Veterans' Bureau, and in 1923 he was adjudged an incompetent by the Common Pleas

Court of Philadelphia. In 1928, at the request of the Veterans' Bureau, and with the consent of his then guardian, he was transferred to the United States Veterans' Hospital at Perry Point, Md., where he remained a patient at government expense until his death.

The tax was assessed by the Commonwealth under the provisions of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, sec. 1, as amended, 72 PS §2301, which provides: "A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases:

"(a) When the transfer is by will or by the intestate laws of this Commonwealth from . . . a resident of this Commonwealth . . .

"(c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift . . . intended to take effect in possession or enjoyment at or after . . . death."

Section 2 provides that the tax shall fall only on the clear value of decedent's property after deduction of such debts as were incurred "for an adequate and full consideration in money or money's worth."

It seems quite clear that the tax was improperly assessed for two reasons. First, because it constitutes an unwarranted burden on the Federal largesse, and secondly, the Veterans' Administration, having from 1922 to his death in 1953 supported and maintained the veteran, it becomes factually apparent, without the aid of an electronic computer, that *adequate and full consideration in money and money's worth* have, under the circumstances, passed to the veteran in exchange for the "conclusive presumption", created by the aforesaid Act of Congress, of his agreed indebtedness therefor to the Federal government.

At the outset it may be appropriate to note that the government and the Commonwealth agree, and this court is in accord, that the exemption from taxation of veterans' benefits which is provided for by the Act of Congress of September 2, 1958, 72 Stat. 1229, 38 U. S. C. §3101, which was construed against the Commonwealth's tax claim in Wanzel's Estate, 295 Pa. 419 (1929) ; Schmuckli's Estate, 341 Pa. 36 (1941) ; and Fisher's Estate, 302 Pa. 516, has no application in the instant matter. Counsel agree that if the present fund were distributable under the intestate laws the exemption would not apply to *property purchased* out of the moneys received from the government and could not possibly apply to the property which the veteran inherited: Southard's Estate, 16 D. & C. 751 (1932) ; Carrier v. Bryant, 306 U. S. 545 (1939).

In attempting to apply the language of the Pennsylvania statute to the facts, it is plain that the award to the Federal government was not because of any *bequest* to it by decedent, for he left no will; also, the award was not made to the government as an "heir" under the intestate laws, for the Intestate Act of 1947, 20 PS §§1.1-17, names the Commonwealth as an "heir".

The award to the Federal government was by virtue of decedent's *contractual relation* with the Federal government arising from the cited Act of Congress which in pertinent part provides that:

"(a) Whenever any veteran (admitted as a veteran) shall die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Veterans' Administration, and shall not leave surviving him any spouse, next of kin, or heirs entitled, under the laws of his domicile, to *his personal property as to which he dies intestate, all such property* . . . owned by him at the time of death and not disposed of by will or otherwise, shall

immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund . . .

"(b) The provisions of subsection (a) are conditions precedent to the initial, and also to the further furnishing of care or treatment by the Veterans' Administration in a facility or hospital. The acceptance and the continued acceptance of care or treatment by any veteran (admitted as a veteran to Veterans' Administration facility or hospital) shall constitute an acceptance of the provisions and conditions of this subchapter and have the effect of an assignment, effective at his death, of such assets in accordance with and subject to the provisions of this subchapter and regulations issued in accordance with this subchapter": 38 U. S. C. §5220.

"The fact of death of a veteran (admitted as such) in a facility or hospital, while being furnished care or treatment therein by the Veterans' Administration, leaving no spouse, next of kin, or heirs, shall give rise to a *conclusive presumption of a valid contract* for the disposition in accordance with this subchapter, but subject to its conditions, of *all property* described in section 5220 of this title *owned by said decedent* at death and as to which he dies intestate." (Italics supplied.)

The Commonwealth contends that the United States is "a corporation" within the contemplation of the taxing statute (United States v. Perkins, 163 U. S. 625 (1896)), and that the inheritance tax is not a tax upon the property itself, but rather a tax on the succession or right of inheritance to the assets of the estate of a decedent: Tack's Estate, 325 Pa. 545. These principles appear to be well settled, but obviously their application is limited to those cases where the taxable "transfer is by will or by the intestate laws of the Commonwealth." As has already been pointed out

there is no transfer here by will nor by the intestate laws; the government's title to all the deceased veteran's property vested solely by virtue of an Act of Congress.

Adequate hospitalization and maintenance without charge are but two of many benefits which the Federal government provides for the needy and others who have served in the armed forces of our nation. We may think of such benefits as an outgrowth of the constitutional powers of Congress to wage war and to provide for the common defense: Art. I, sec. 8 of the United States Constitution. But the idea of military pensions actually antedates our Constitution.

History records that it was in the reign of Elizabeth I that the problem of caring for needy ex-soldiers first received national recognition in England. Parliament in 1592-3 passed the first statute for the "reliefe of Souldiors" which provided for those who had served in the year of the Spanish Armada.

In this country the Virginia and Plymouth colonies, following the example of the mother country, enacted pension laws early in the seventeenth century. The first Federal pension law was passed in 1792. Numerous statutes have been enacted since then, the most recent being the Codification of Veterans Benefits of September 2, 1958, 72 Stat. 1106, 38 U. S. C. §§101 et seq. See History of Legislation pertaining to Veterans' Benefits, 38 U. S. C., page 1.

The validity of these assignments, created and made "conclusively valid" by Act of Congress, has been regognized by many courts: Skriziszouski Estate, supra; In re McGhee's Estate, 149 Misc. 713, 268 N. Y. S. 79; In re Bonner's Estate, 192 Misc. 753, 80 N. Y. S. 2d 122; In re Milnowski's Estate, 155 N. Y. S. 2d 71; In re Turner's Estate, 171 Cal. App. 2d 591, 341, P. 2d 376; United States v. State of California, 143 F. Supp. 957 (D. C. Cal. 1956); United States v. Mid City Nat.

Bank of Chicago, 121 F. Supp. 402 (D. C. Ill. 1953). Of especial interest are the cases of Skriziszouski, Mc-Ghee and Bonner because in each of them the property involved was not solely derived from veterans' benefits paid to decedent while living. The court in McGhee's Estate, supra, page 82, said:

"It is clear that a contractual relationship arose between the veteran and the home . . .

"The equities of the situation also are such as tend to sustain and uphold the federal statute and the applications executed thereunder as reasonable rules or regulations in connection with the maintenance of the veterans at the home, for the reason that the personal estates are, almost without exception, made up of pension moneys paid over a period of time to the veterans by the federal government, while they were being maintained and cared for by that government. Likewise the propriety of the federal act as a proper rule or regulation is accentuated by the provisions that such funds are for the sole use and benefit of the post fund of the home, thereby adding to the comfort and well-being of the veterans."

In Skriziszouski Estate, supra, our Supreme Court pointed out, at page 638:

"The Federal Government gave the money in question to the deceased veteran and furnished him with free hospitalization and care with the obvious intention of benefiting him and if he left no will, his wife, next of kin or heirs, meaning his relatives. Whether viewed as a practical matter or from the language of the Act or both, there was no intent to benefit the States of the Union. . . . Congress obviously had no intention of giving to *another sovereign* this personal property which it generously granted to a veteran on certain specified conditions. . . ." (Italics supplied.)

And as was so succinctly stated by Roberts, P. J., in Chojnacki Estate (No. 2), 15 D. & C. 2d 703, 705:

"Both the State and Federal governments have assumed certain responsibilities for the welfare of an incompetent veteran. Within their respective exclusive areas each is supreme, and neither may successfully require the other to render services or make contributions beyond those which are lawfully mandated by their respective governing authorities."

It being thus clearly established that the United States is entitled to 100 percent of the deceased veterans' funds, regardless of their source, what right does the Commonwealth have to withhold 15 percent by way of tax? Obviously, in the light of the above judicial comments, such taxation would be an unwarranted interference with the duty of Congress to provide for the national defense. The words of Chief Justice Marshall in the historic decision of McCulloch v. the State of Maryland, 4 Wheaton 316, 436 (1819), are pertinent:

"The result is a conviction that the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared." See also United States v. City of Detroit, 355 U. S. 466, 469 (1958); United States v. County of Allegheny, 322 U. S. 174, 176, 177 (1944).

The Commonwealth further contends that the instant transfer is covered by section 1(c) of the Transfer Inheritance Tax Act, 72 PS §2301(c), which levies the tax "When the transfer is . . . by deed, grant, bargain, sale or gift . . . intended to take effect in possession or enjoyment at or after . . . death."

This contention is found to be without merit if the section just referred to is read in conjunction with the following section 2, of the taxing statute, 72 PS §2302. That section in pertinent part provides:

"All taxes imposed by this act shall be imposed upon the clear value. . . . In ascertaining the clear value . . . the only deductions to be allowed . . . shall be the debts of the decedent. . . . Provided, That the deductions herein allowed in the case of any indebtedness of the decedent shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth."

That there was a valid contract between decedent and the government has already been determined by this court in dismissing the Commonwealth's claim at the audit of this decedent's estate. The withdrawal by the Commonwealth of its appeal makes that decision final and conclusive as against all the world. That such contracts when supported by valuable consideration in money or money's worth are not contrary to public policy, is shown by Mills Estate, 367 Pa. 504; Neller Estate, 356 Pa. 628; Ressler's Estate, 18 D. & C. 393; Stone Estate, 81 D. & C. 60. Cf. Armstrong Estate, 3 D. & C. 2d 285, where the transfer by decedent to the home for old folks was effected within one year of the transferor's death. In that case the home failed to overcome the *statutory presumption* that the transfer to it was made in contemplation of death and did not prove that the transfer was for an adequate and full consideration.

That in the instant case decedent received *adequate and full* consideration appears from the mere statement of the fact that one-half of the accumulated fund represents proceeds of the government payments and that for a period of 25 years decedent was a patient in the government facility where he died.

Finally, before the burden of any tax can be levied on any individual or corporation (public or private), the terms of the taxing statute must be clear and unmistakable: Arbuckle's Estate, 324 Pa. 501. Thus as

534

was said in that case, at page 505: " 'No tax can be collected in the absence of a provision clearly imposing it upon the class to which the taxpayer or his property belongs' . . . 'It is well settled that tax laws are to be construed most strictly against the government and most favorably to the taxpayer, and a *citizen* cannot be subjected to a special burden without clear warrant of law'," and, we may add, much less can such burden be imposed upon the *sovereign*.

### Decree

And now, April 22, 1960, the appeal of the Federal government is sustained, and the record is remitted to the register.